## COATES' APPEAL.

2  129
20  274
20  279
2  129
152  113

2  129
e 22 SC ³266
22 SC ³267

1. On bequest to wife of personalty absolutely, having full confidence that she will leave the surplus to be divided, at her decease, justly among testator's children, the widow is entitled to the income for life merely, and is a trustee for the children of the principal.
2. There being a previous devise for payment of debts, the word "surplus" construed to mean all that shall remain thereafter, and not to give any right of disposition to the widow during her life.
3. Words of desire, expectation, or confidence, create a trust, whether the subject be real or personal estate.

APPEAL from the Orphans' Court of Chester county.

*Jan.* 5, 6.—Pennock, by his will, gave his real and personal estate to be possessed and enjoyed by his wife for life, or during widowhood, " to be used and applied to maintenance and support of his children, and at her decease or marriage, should either take place before they come of age, then among them equally."

By a subsequent will and codicil, revoking all others, he gave, after payment of debts, " the use, benefit, and profits of his real estate to his wife for life, and also all his personal estate of every description, including ground-rents, bank stock, &c. &c., absolutely, *having full confidence that she will leave the surplus to be divided, at her decease, justly among his children.*" He then made specific bequests of his real estate to his children ; and annuities to each of his daughters out of his personal estate, during the life of his wife, to cease on their marriage. He then recommended the children to remain in the family with their mother, expressing a confidence they would have a comfortable home. By the codicil he directed an appraisement of the real estate, as soon as convenient, after one of his daughters came of age, and directed that if the marriage of any child, or education of his son, should make an addition to his wife's income necessary, certain real estate should be sold, and the proceeds placed at the disposal of his wife for the benefit of his children, as she should judge prudent. He then expressed confidence in his wife's discharging the duties of a mother, and a desire that they would manifest filial subjection and attachment, with many expressions of affection to both wife and children. On the death of the wife, the husband of one of the children petitioned for a citation for the settlement of the widow's accounts, as surviving executor of the testator. The petition stated she had made a will. That testator's real estate was large, and the personalty exceeded $110,000. The executor of the widow demurred, and the court dismissed the petition.

*Lewis* and *Sergeant,* for appellant.—It is well settled that precatory or recommendatory words, or those of confidence, create a trust.

VOL. II.—17

2 Story Eq. sect. 1068; Lewis on Trusts, 77, 78; 2 Rop. Leg. 296; 17 Ves. 255; 2 Ves. jun. 335. Whether she executed it by will was refused to be shown. Morris v. Bishop of Durham, 9 Ves. 399, does not apply, and was overruled in Witman v. Lex, 17 Serg. & Rawle. Perhaps she might discriminate, but not refuse to execute, in which case it goes under the statute of distributions. 1 Atk. 468; 4 Ves. 708; 8 Ves. 570; 3 Ves. & Bea. 198; 9 Ves. 319; 2 Bro. Chan. Rep. 38; 3 Mer. 437; 2 Ves. 335. The word "surplus" is certain enough. 3 Yeat. 187; Jacob, 517; Ll. & Gould, 454; 2 Ves. jun. 336. 1 Serg. & Rawle, 387; 1 Bro. Chan. Rep. 179; 3 Ves. 7. It was from kindness and respect to the widow that she was not restricted during life, and their connection shows a mutual understanding expressed by the word "confidence." The absoluteness of the gift was essential to create the trust and not leave it a naked power.

P. Smith and Meredith, for appellee.—The doctrine is not countenanced in England at present, and has never been decided in Pennsylvania. 1 Sim. 534, 540, 566; 1 Ves. & Bea. 316; 2 Rop. 308; 2 Story, 1069; Prec. Ch. 500; 1 B. R. 142; 10 Sim. 1. The three requisites, according to these cases are, 1. Words sufficient to create a trust. He gives it absolutely, though but a life-estate in the realty.

2. Objects certain. 3. Subjects—it is what remains after what she chooses to spend, and is too uncertain. 2 Cox, 349, 354; 1 Sim. & Stu. 301; 8 Ves. 375; Fitzgib. 414.

Jan. 21. ROGERS, J., after stating the facts, delivered the opinion of the court.—The testator died, seised of a large real and personal estate, the income of which was little, if any, short of $8000; the personal estate, besides ground-rents, being, as appears by the inventory and appraisement, $110,622 05.

To the petition, the respondent demurs, and the only question is, as to the interest which the widow took in the personal estate. The petitioner contends, the bequest of the personal estate was for the benefit of the wife during her life, and in trust for the children after her death. The respondent, that she had an absolute estate in the personal property, with the right of disposing of it in her lifetime, and after her death as she might think proper. One asserts it to be a trust, the other an absolute gift.

It is worthy of remark, in the first place, that no person can read this will without coming to the conclusion that the principal objects of the testator's bounty were his children. Every clause and expression in the will evinces this. He speaks of them in the tenderest manner, and uses the most endearing terms. The means by which he seeks to

secure their welfare is by a devise to his wife of almost the whole of his estate, real and personal, the income of which he confidently supposed would be devoted to that object. It is a cardinal rule in the construction of wills, that the general intention of the testator is to be carried into effect. Particular words and expressions being always subservient to the general purposes of the testator. The principles which appertain to the case are settled by abundant authority. The only doubt which can arise is the application. Is this an indirect or constructive trust for the benefit of the children after the death of the wife? It is a general principle, that whenever a person having a power of disposition over property manifests any intention, with respect to it, in favour of another, the court, where there is no want of consideration, will execute that intention, through the medium of a trust, however informal the language in which it happens to be expressed. A court of chancery will execute the general intention of the testator, without regard to the manner it is announced. And on this point it is decided that a testator manifests an intention of creating a trust, if he employ words precatory or recommendatory, or expressing a belief; as if he desire, will, request, will and desire, wish and request, entreat, most heartily beseech, order and direct, authorize and empower, recommend, hope, do not doubt, be well assured, *have the fullest confidence*, or use such expressions as " of course the legatee will give, in consideration the legatee has promised to give," &c. These principles are supported by a host of authorities. Lewis on Trusts, 77; 2 Story's Eq. 328, and in Ward on Legacies, 297, where all the cases are cited.

The testator leaves all his personal estate to his wife, Martha Pennock, absolutely, having full confidence that she will leave the surplus to be divided, at her decease, justly among his children. Setting aside the word " absolutely," and " surplus," of which I shall speak hereafter, it cannot be doubted that this case falls within the principle of the cases cited, and particularly Wright *v.* Atkyns, 17 Ves., which was a devise to A. and her heirs for ever, in the fullest confidence that after her decease she will devise the profits to his family. It was there held that A. has an estate for life only, with remainder in trust for the devisor's heir as persona designata.

That this then is a trust in the wife for life, with a remainder in trust for the testator's children, seems clear, unless there is something in the will which manifests a different intent. It is very true that the current of decisions, of late years, has been against converting the legatee into a trustee. Sale *v.* Moor, 1 Sim. R. 534; Meredith *v.* Heneage, 1 Sim. R. 452. Mr. Justice Story, in his treatise on Equity, p. 329, in commenting on these decisions, remarks: " The doctrine of

thus construing expressions of recommendation, confidence, hope, wish, and desire, into positive and peremptory commands, is not a little difficult to be maintained, upon a sound principle of interpretation of the actual intentions of a testator. It can scarcely be presumed, that every testator should not clearly understand the difference between such expressions, and words of positive direction and command, and that in using the one, and omitting the other, he should not have a determined end in view. It will be agreed on all hands, that when the intention of the testator is to leave the whole subject as a pure matter of discretion, to the free will and pleasure of the party enjoying his confidence and favour, and when his expressions of desire are intended as mere moral suggestions to excite and aid that discretion, but not absolutely to control or govern it, then the language cannot and ought not to be held to create a trust. Now, words of recommendation, and others precatory in their nature, imply that very discretion, as contradistinguished from peremptory orders, and, therefore, ought to be so construed, unless a different sense is irresistibly forced upon them by the context. Accordingly, in more modern times, a strong disposition has been indicated not to extend this doctrine of recommendatory trusts ; but as far as the authorities will allow, to give to the words of wills their natural and ordinary sense, unless it is clear that they are designed to be used in a peculiar sense." I have made this extract of the remarks of Mr. Justice Story, with a view of expressing my dissent. With the utmost deference to the wisdom of the profound jurists, who seem to censure the judgments of their predecessors, I hope it will not be considered as presumptuous if I venture to adhere to and vindicate the propriety of the ancient doctrine. A different interpretation of wills, with all respect I submit, would, in a very great majority of cases, defeat the manifest intention of the testator ; for although a husband may think it but kind and respectful, proper, decorous, and affectionate, to use mild and persuasive terms, in addressing a beloved wife, a valued friend, or a dear child, yet they are as indicative of intention as when he used words absolute and imperative. No person can doubt that by such expressions he intended to indicate his design, that they (his children, for example) shall, in proper time, reap the fruits of his bounty. I admit, that where, from the will, it is apparent that expressions of desire, recommendation,' &c., are intended as mere moral suggestions, to excite and aid the discretion reposed in the first taker, but not absolutely to control or govern, that the language cannot, and ought not, to be held to create a trust. But I cannot agree, that unless it is clear that they are designed to be used in a peremptory sense, they must be regarded in what they are pleased to call their natural and

ordinary sense. In my opinion, and I announce it with all deference, the reverse is the proper rule, unless it appears, from the context, that such was not the intention of the testator; words of desire, recommendation, and confidence, should be construed in an imperative and peremptory sense. The word *confidence*, be it remarked, is a word peculiarly appropriate to create a trust. It is as applicable to the subject of a trust, as nearly a synonyme as the English language is capable of. *Trust* is a confidence which one man reposes in another, and confidence is a trust. Nay, I agree with the learned counsel who argued the case, that the words used in the will would, if used in a deed, create a trust, which a court of equity would compel the trustee to execute. On an attentive consideration of the will, we are clearly of opinion that there is nothing which shows that the testator intended to create his widow the absolute and uncontrolled owner of the personal estate. If then there is nothing else in the case, she must be deemed as entitled to nothing more than a life-estate; as to the remainder, she is but a trustee for her children. In Roper on Legacies, 297, supported by the authority of Lord Eldon, in Wright *v*. Atkins, 1 Turn. 157, also Morris *v*. Bishop of Durham, 10 Ves. 538, the rule is laid down, thus: When a person bequeaths property to another, absolutely or for life, accompanied with words expressive of recommendation, request, hope, or expectation, that the legatee will dispose of the gift as his own, to or among one or more objects, the court of chancery will construe such recommendation or request as a trust; provided the words be imperative, and the objects and the property certain. It must be remarked how completely the bequest in this will tallies with the rule laid down. Thus, where a person bequeaths to another, *absolutely* is part of the rule, the same term used by the testator here. In fact, this word, or one of equal signification, was necessary to create an interest in the corpus, and to distinguish it from a power which, in the nature of things, widely differs from a trust. In the former, the party may or may not act, at his discretion. In the latter, the trust will be executed, notwithstanding his omission to act. The cases must be carefully distinguished from each other, as their effects are so entirely different; and hence I am not without suspicion it was designedly used for that purpose. But be this as it may, it is difficult to imagine why the word *absolutely*, used in this will, should have more potency in vesting the uncontrolled power over the interest bequeathed, than the words in Wright *v*. Atkins, 17 Ves., which was a devise to A. and his heirs for ever, and yet held, notwithstanding, to be a devise to A. of an estate for life, with a remainder in trust for the devisor's heirs, as

M

personæ designatæ. In this particular, it is conceded, there is no difference between real and personal estate.

But the courts will not construe precatory or recommendatory words as trusts, where the objects intended to be benefited are imperfectly described, or the amount of the property to which the trust should attach is not sufficiently defined. The reason given of the limitation by Lord Eldon, in Morris *v.* Bishop of Durham, 10 Ves. 536, is because, from the difficulty which would attend the execution of such trusts, a conclusive argument arises that no trust was really intended.

Were, then, the objects of the trust certain and definite? is the next inquiry. In respect to certainty (says Story, J., in his treatise on Equity, p. 331, in which he is supported by the authorities cited) in the description of objects or persons, in recommendatory trusts, it may be proper to state that it is not indispensable that the persons should be described by their names; but mere general description will often amount to a sufficient designation of the persons to take; such, for example, as sons, children, family, and relations, if the context fixes the particular persons who are to take, clearly and definitely. Thus a devise to the family of A. will often be a sufficient designation, and may be construed to mean the heir-at-law of A., or the children of A., or one of the relatives of A., according to the context. On the other hand, the language may be so loosely and indeterminately used, as not to amount to a clear designation of persons, and thus the recommendation may fail to create a trust. The latter branch of the rule is illustrated by divers cases cited, which it is unnecessary to notice particularly. Here the persons designated to take are the testator's children, which has been held, as above stated, to be sufficiently certain and definite.

Next as to certainty in the description of the property, or as to what property is given. It is argued that where there is any uncertainty of the property to which the bequest should attach, it defeats it as a recommendatory trust. Thus in Pushman *v.* Filliter, 3 Ves. 7, testator gave the residue of his personal estate to his wife, desiring her to provide for her daughter A., out of the same, as long as his wife should live, and at her decease to dispose of what shall be left among his children in such manner as she shall judge most proper. Held, that it is not an absolute trust for the children after the death of the wife. So when the testator bequeaths to his wife the residue of his personal estate, not doubting but that she will dispose of what *shall be left at her death,* to his two grandchildren, it was held not to be a recommendatory trust. As there was an uncertainty as to what *might be left,* the widow having the power to dispose of as much as she pleased, it

defeats it as a trust, and is an absolute gift to the wife. So if, in this case, the fair construction, " having full confidence that she will leave the surplus to be divided at her decease, justly among my children," should be that the wife had an absolute control over the whole personal estate, to do with it as she pleased—to sell it or give it away—and that the testator intended the remainder, or residue only, left at her death, should be divided among her children, the uncertainty attached to the bequest will defeat it as a recommendatory trust. This is conceded; on the other hand, if, on a sound construction of the whole will, the testator's intention was to bequeath to his wife the income of his estate during life, under a trust that at her decease it would be divided among his children, that the word "surplus" refers to *his death*, and not to the death of his wife, it must be viewed as a recommendatory trust, which a court will take care shall neither be defeated nor perverted.

What then was the general intention of the testator, to be collected from the whole will, the amount of the property bequeathed, and the situation of his family? The will, as before observed, must be construed in subservience to the general intention. The testator died leaving a large real and personal estate, the income of which was little, if any, short of $8000 a year. This income was amply sufficient, unless on the happening of a contingency, to supply all the wants, nay luxury, of his wife and children, for whose welfare he seems to have been so anxious. There was, therefore, no necessity for giving her more than the income of his estate, which he, it is evident, deemed enough for these purposes, unless on the happening of a contingency, for which he provided in the codicil. " It is my will, and I hereby direct, that the appraisement of my real estate be made as soon after my daughter Mary Ann Pennock arrives at the age of twenty-one years, as may be convenient; and moreover, in case either of my children should enter into the marriage state, or that the educating of my son, George Pennock, should make it necessary that a further addition to my *wife's income* should be made, then, and in that case, I direct, that the slitting mill, or the water-power thereof, together with the land adjoining thereto, containing about seventy-five acres, more or less, &c., to be sold, and the proceeds thereof placed at the disposal of my dear wife, for the benefit of my children, as she may judge prudent." The words, " my wife's income," are significant of the intention, and certainly refer not only to the profits of the real estate, but the interest and profits derived from ground-rents, bank stocks, bonds, &c., which he had bequeathed to her. It is at least susceptible of that construction, and to prevent the general intention from being defeated, I consider that we are bound to give it that con-

struction.  If the income only is given to the wife, all uncertainty ceases.  It is evident, from this clause in the codicil, that the testator was unwilling that she should have power to dispose of the corpus of the bequest, for in the contingency pointed out, which might make a further addition to her income necessary, he designates what is to be sold.  He sets aside part of his real estate for those purposes, leaving his personal property intact, for a reason, probably, which belongs to the history of the times when the will was written.  Then his personal property, which consisted of bank stock, ground-rents, notes, and bonds, was supposed to yield a more fixed, certain, and determinate income than real estate.  He places the proceeds at the disposal of his wife, for the benefit of his children, as she may judge prudent. He gives her absolute power over the purchase money, to be disposed of, not according to her caprices, but for the especial benefit of his children, who were principally the objects of his affectionate regard and most anxious care.  Although she has power over the corpus, could she have sold the property under the pretence of executing the will, and given it to a stranger to the testator's blood?  An attempt to do so would shock the moral sense of every man in the community, and would be promptly restrained by a court of equity.  And if this mother had been so unnatural as to endeavour to disappoint the just expectations of her offspring, to violate the solemn trust and confidence reposed in her, enforced as it is in almost every clause and paragraph of the will, by a bequest to a person not of his blood, who would not feel it as an outrage on the testator's intentions?  And yet it is for this absolute power and control the counsel for the respondent contends, and to prevent which, the decisions, which make recommendations equivalent to commands, have been ruled; decisions grounded upon the well-founded presumption that by this train of judicial interposition, the courts carry into effect that cardinal rule of construction, that the intention of the testator must govern.  If the income only be given to the wife, and this is the result of a close investigation of the different provisions of the will, it follows that there is no want of certainty in the bequest.  But it is said an uncertainty arises so as to defeat the trust, from the use of the word " surplus. '  If we take the two items of the will in juxta-position, and consider them together, it seems to me to furnish the key to the testator's intention.

In the first place, says the testator, " it is my will and desire that all my just debts and funeral expenses be fully paid and discharged.  Then I will and bequeath unto my dear wife Martha Pennock, the use, benefit, and profits of all my real estate during her natural life, and also all my

personal estate of every description, including ground-rents, bank stock, bonds, notes, book debts, goods and chattels, absolutely, having full confidence that she will leave the surplus to be divided, at her decease, justly, amongst my children." In other items, he bequeaths unto his four unmarried daughters the sum of $50, to be paid to each of them yearly, during the lifetime of his wife. In case, however, of the marriage of his said daughters, the allowance of such to cease. These payments to be made out of his personal estate. To what does the word *surplus* refer? It seems, to the amount of money or personal estate which remains, after the debts, funeral expenses, and legacies are paid. That is the natural signification, and best comports with the general intention. He orders his debts and funeral expenses to be paid, and, of course, out of his personal estate, and then immediately after adds, that the surplus shall be divided, at her decease, justly among his children. The division is to be made at her decease, but the sum which is to be divided is ascertained at his death, the amount of which consists of the aggregate of his personal estate, after deducting the sums required to pay debts, funeral expenses, and legacies. If, then, the testator refers to this time, or immediately after his own death, the bequest is certain, and definite; it is susceptible of easy ascertainment and mathematical demonstration. It depends on the will and caprice of no person, and consequently cannot be used as a means of defeating the trust. The maxim applies, and it could not be applied to a better purpose, id est certum, quod certum reddi potest. Without quarrelling with the cases which have been cited on this head, although I am not altogether satisfied with their soundness, it is sufficient to observe they do not apply. No intention adverse to a trust can be inferred from it, as in the case where the residue of the estate is that only which the wife chooses to leave. Here, if our deductions be true, she had no claim. She could spend the income, as he directed, for the good of her children; but the surplus, or that which remains after paying debts and funeral expenses,—the capital stock,—was beyond her control. For that, she is a trustee for the benefit of her children, the recommendations, if they may with propriety be so termed, being equipollent with an express and positive command.

In order to prevent misapprehension, I wish it to be distinctly understood that all we decide on the demurrer is, that Martha B. Pennock, the first taker, had but a life-estate in the personal property bequeathed to her by the testator, with remainder in trust for the testator's children. Whether he gave her power to make a will, and to discriminate among her children, according to her idea of justice, we do not undertake now to decide. We reserve the consideration of these points until the whole

case, on further hearing, is brought before the court.    As the case now stands, we are of opinion that the Orphans' Court erred in not over-ruling the demurrer, and compelling the respondent to a further answer.

The decree of this court, therefore, is, that the decree of the Orphans' Court, sustaining the respondent's demurrer, be reversed ; record remitted to the Orphans' Court ; and pro-cedendo awarded.