## McKonkey's Appeal.—In re. Pennock's Estate.

Testator bequeathed to his wife M. the use of his real estate during life, and his personal estate absolutely, "having full confidence that she will leave the surplus to be divided at her decease justly among my children."  M. took an estate for life in the personalty, with a power, in the nature of trust, in favor of the children, over the principal of the personal estate, remaining at her death, to be exercised by her will, and not by any act in her life time; and though discretionary, an appointment by will omitting one or more of the children is void.  But advances made by M. during her life time to her children, are satisfaction *pro tanto*, and to be deducted from their respective shares.

The children are not estopped from setting up the trust by reason of recitals in deeds in which they joined, or under which they claimed, that the personal estate had been devised to her absolutely.

FROM the Orphans' Court of *Chester county.*

January 2, 3, 4.—Isaac Pennock, by his will, dated in 1824, "devised to his wife, Martha Pennock, the use, benefit, and profits of my real estate, during her natural life; and also all my personal estate of every description, including ground-rents, bank stock, bonds, notes, book debts, goods and chattels, absolutely; having full confidence that she will leave the surplus to be divided at her decease justly amongst my children."

He further devised two farms to his sons Isaac W. and George, and the residue of his real estate, after the death of his wife, to his five daughters, Rebecca Lukens, Sarah, Martha, Anne and Mary Pennock, equally in fee, and $50 annually, out of his personal estate, and appointed his wife executrix.

By a codicil, he directed a sale of certain real estate, in case any of his children should marry or the education of his son George should make a further addition to his wife's income necessary; the proceeds of which were to be placed at the disposal of his wife, for the benefit of his children, and appointed his son Isaac joint executor with his wife. The will was proved in 1824. Isaac, the son, died, and the widow continued to act as sole executrix. In 1844, she died, having made a will appointing McKonkey her executor.

A citation was then issued at the instance of Coates, the husband of one of the testator's daughters, requiring McKonkey, as executor of Mrs. Pennock's will, to settle her account as executrix of the testator. To this a demurrer was filed, which was overruled, the court holding that Mrs. Pennock had but an estate for life in the personalty, (vide Coates' appeal, 2 *Barr*.) An answer was then put in, setting up, among other things, the will of Mrs. Pennock, as a disposition of the estate derived from her husband, according to his wishes, though she was under no legal obligation so to do. The matter was referred to an auditor to take proof of the facts and report a distribution if necessary. His report found a balance due from the estate of Mrs. Pennock to that of her husband of $43572 27. This fund, after deducting certain charges, was distributed by the court equally among the children of the testator, the children of his deceased son Isaac taking their father's share, and Mrs. Pennock's executor taking the share of George W. Pennock, who was a debtor to her estate.

From these decrees these appeals were entered. The facts material to the points taken, were as follows: Anne, one of the testator's children, died in 1826, intestate and unmarried. Isaac W. a son of testator, died in 1832, leaving issue and a will.

Mrs. Pennock, by her will, disposed of all her real and personal estate, but without reference to the will of her husband. The children of her husband, named as devisees or legatees in her will, were Sarah, Mary and George; she also released all debts due her by her children.

Among the real estate of the testator were certain iron works, called Rokeby, which were sold by his executors and purchased for Mrs. Pennock. In 1837, this property was sold to Gardner, et al. The children of the testator, then living, joined with Mrs. Pennock, in the conveyance. In the recital of the title the testator's will was mentioned, "whereby after devising and bequeathing to his wife, Martha B. Pennock, all his personal estate absolutely," Isaac W. Pennock devised his whole estate to his wife during widowhood, whom he also appointed executrix, remainder to his children. In 1834, Mrs. Pennock executed a release to the executrix of her son Isaac, of all claims by reason of his having been executor of the testator. In this release it was recited that

the testator had bequeathed all his personal estate to his wife absolutely. In 1843, Mrs. Pennock, by deed, assigned certain securities to Penrose, (the husband of Mary Pennock) in trust for herself for life, remainder in certain proportions to Rebecca, Sarah, Martha, Mary, children of testator, and the executrix of Isaac W. Pennock. This deed recited that the testator had bequeated all his personal property to his wife. It was also shewn that after the purchase of Rokeby by Mrs. Pennock, she had expended $9000 upon it, from the personal estate of her husband. The sale by her to Gardner *et al.* was at a large advance. Of the securities received by her for the purchase money, $24000, was assigned to Penrose by the deed of 1843, and it was shewn that this assignment was a compromise of a claim by the children for part of the purchase money. Some of the other securities, passing by this assignment, had been the property of the testator.

The legatees of Mrs. Pennock accepted the legacies given by her will. It was also proved that most if not all of the children of the testator had received advances from Mrs. Pennock either by way of direct gifts or advantageous leases of portions of the real estate during her life time. She denied the trust in the testator's will and set up an absolute right in herself; but this was disputed by her children. The auditors refused to deduct from the shares of the distributees the difference between the actual value of the real estate and the rent at which Mrs. Pennock allowed her children to occupy the property. The share of I. W. Pennock was awarded to Mrs. Pennock's executor, in part satisfaction of the debt due by him to her.

Appeals were also entered by the legatees, alleging that the court erred in not charging interest against the estate of Mrs. Pennock on their respective shares, and by the insolvent trustee of George W. Pennock, who claimed the share of his assignor.— By the will she had released the debt due by him to herself amounting to $26,000.

*P. J. Smith* and *Williams* for the executor of Mrs. Pennock. The parties are estopped by the recitals in the various deeds under which they have taken benefits and which were family arrangements, from setting up that Mrs. Pennock was not the owner of the personalty: *Co. Sit.* 352, *a*; 1 *Green. Ev.* sec. 22, 27, 207, 211; *Cowp.* 597; 1 *Wharton* 356; 7 *Barr* 199, 356; 13 *Wend.* 206; 8 *Cow.* 586; 6 *Barr* 406; 1 *Stor. Eq. s.* 132; 1 *V.* & *Bm.* 23; 2 *Atk.* 592; 1 *S.* & *St.* 565; 1 *Keen* 673; 1 *Ves. Sr.* 19; 3 *Swanst* 463. They have also by their acquiesence in her claim to hold her husband's estate absolutely, and by accepting benefits bestowed on that footing, precluded themselves from now controverting her right: 1 *Green. Ev.* 1st supra, and sec. 169, 197; 7 *W.* 400; 9 *Barr* 459; 2 *Yeates* 398; 2 *Rawle* 374.

In Coates' Appeal nothing more was decided than that Mrs. Pennock was not the absolute owner of the personalty; was there a single trust, or a power in the nature of a trust, given her by her husband's will over the remainder of his estate? That it was the latter is shown in 2 *Sug. Pow.* 179. If so, the estate was absolute, because it must always be coextensive with the object of such a power. The words "full confidence" are always expressive of a power in the nature of a trust; and the words that she will leave it justly, necessarily imply a testamentary act with discretion in the donee as to the exercise: 1 *V.* & *Bms.* 313; 2 *Rop. Leg.* 301; 4 *Ves.* 711; 8 *ib.* 561; 3 *Meriv.* 437; 1 *Sug.* 394; 2 *Ves. Sr.* 60; 1 *Ves. Jr.* 310; 4 *ib.* 785. That she exercised it, is clear, she gives the whole estate intrusted to her. Though the will was a very proper instrument, it might be executed in another manner, as by a gift during life; and where there is not title to fulfil the devise, it will be supported as an execution of the power. 1 *Sug.* 395, 437–8; 2 *Watts* 188. But this was a mere debt arising from a breach of trust, and hence clearly part of the estate; and if there was not a valid exercise of the power, is her estate to account, without reference to provision made for the appointees, out of the fund, during the life of the donee of the power? These are deemed to be satisfaction of the trust or power: 1 *Sug.* 576, 170, 228; 2 *Ves. Jr.* 697; 18 *ib.* 8. But it is said this appointment is illusory, and hence void. It is the first attempt to introduce that doctrine in this State, and the rule in England has been changed by act of Parliament, after attention was drawn to it, in Butcher *vs.* Butcher, 9 *Ves.* 397. That rule, however, required that there must be a fraud on the power to render its exercise void. Here the gifts, during life, were a partial execution, and the will was but the completion. The children of Isaac W. Pennock are out of the case, for the power is confined to the children of the testator, living at the death of the donee: 2 *Sug* 273; 2 *Wood. Sect.* 204; 1 *East.* 442; 2 *Ves. Sr.* 60, 640; 2 *Ves. Jr.* 336, 367, 698; 4 *ib.* 681; 9 *ib.* 328, 382; 2 *Blac.* 249; 2 *J.* & *Walk.* 431.

*J. Lewis* and *J. Sergeant*, contra.

The opinion of the court was delivered by

GIBSON, C. J.—The decree in Coates' appeal settled the point, that the bequest of the personal estate gave Mrs. Pennock the ownership of it for life; and that though it was expressed in words of absolute gift, they were qualified by the testator's declaration of confidence, that she would leave the surplus to be divided justly among his children. The doubt was, whether this declaration operated as a limitation of the gift, or as an explanation of the motive for it; and the weight of authority inclined to the former. In

the English courts, the current of decision is beginning to set the other way; and it may be thought we ought to have fallen in with it. My own opinion is that we ought not; and it is founded on a belief, not that the precedents have more frequently accorded with the intention as to the quantity of the particular interest, but that they have accomplished the ulterior design of the gift. They have restrained the immediate legatee from giving the property to strangers, while they have left room enough for discrimination between the members of the class ultimately to be benefited; and they have thus produced the permanent results intended. No more was determined in Coates' appeal, however, than that Mrs. Pennock had an interest for life, and a trust for the children; but whether in equal or unequal portions, at her option, was not determined; and we are now to say whether she had a power in the nature of a trust, and whether it was well executed.

It is settled that under a bequest for life, with such a power over the residue, all take equal portions immediately under the will in case the power be not executed; and that an execution of it does no more than alter the allotments; but that all must take something, and take it, not from the donee of the power, but from the testator, as a particular bequest of so much to each. Now, if the intent, in this instance, was to declare a trust for the children, as equal takers in any event, it would have been more easy and natural for the testator to express it as he did when he was limiting a remainder of the realty after an estate for life, in the neatest and most skilful way; for he knew what he was about, and he meant to do more. But if he meant to say that Mrs. Pennock should have the personalty for life, with no other power over the surplus than to divide it equally, he meant to say nothing; for the statute of distribution would have said it for him. He certainly meant that what he significantly calls the surplus, should be left by will; but a power which could produce no difference of result, whether executed or not, would be no power at all, and a testator would be chargeable with absurdity for an attempt to create it. Mrs. Pennock was empowered to divide justly, not equably; and the use of the word implies an exercise of discretion. In a general sense, equality is said to be equity, but it is not universally so. The lord of the vinyard might give full wages to the laborer who had come in at the eleventh hour, without wrong to him who had borne the burden and heat of the day; that concerned his generosity, not his justice; but there may be cases in which equality would be, not only inexpedient, but unjust. A son might forfeit his claim to it by becoming a spendthrift, a gambler, a drunkard, or a felon, while his brother may have been laboring to support the family and improve the estate. The testator might know that all his children were fit recipients of his bounty at the date of his

will, but he could not foresee what they would be at his widow's
death.   He surely meant to subject them to her control; yet they
would have been independent of it had he not put into her hands
the means to make them submit to it.   It is impossible not to
think that he designed to give her at least a restricted right of
disposal, else why speak of confidence in a person powerless to do
harm or good?   We are bound, if we can, to give effect to every
expression in a will.   Strike out the word justly, as distinguishable
from equably, and you reduce the testamentary disposition of the
personal estate to a bare interest for life—certainly no great mat-
ter for a flourish of words; for the statute of distribution would
have given the surplus in equal parts.   There is no reason to
doubt that the testator thought he was giving Mrs. Pennock the
absolute interest, and that his expression of confidence in her jus-
tice was to satisfy the children that he did them no wrong; and
though we are bound by authority to give her no more than a
power in the nature of a trust over the residue, we are bound to
execute his plan where we may.   Now the words, "*leave* to be
divided," give a clear right of disposal *by will*.   Such is Doe *vs*.
Thorley, 10 *East*, 483, in which the words were, "also at her dis-
posal afterwards to *leave* it to whom she pleased."   The question
there was on the construction of a power; here it is on the exist-
ence of it; but the question would have been an immaterial one
had there been no power to be construed.   In one aspect, that
case is not to be reconciled to the Anonymous case in 3 *Leo.* 71,
and to one or two others; but in those also, the existence of a
power from a limitation for the life of the first taker, followed by
the words, "after his death," or, "*then* to be at his disposal," was
taken for granted, the question having regard, not to that, but to
the instrument of execution.   On principle and authority, there-
fore, we are to take it that there was a power in the nature of a
trust; and what was the subject of it?

The testator gave the profits of his real estate to Mrs. Pennock
for life, and his personal estate absolutely, having, as he said,
"full confidence that she would leave the surplus to be divided, at
her decease, justly among his children."   It is plain she was to
use, not only the income of the personal estate, but the estate it-
self, as if she were the untrammelled owner of it.   What other
meaning can be given to the word absolutely?   We may not strike
it out, and if he meant not to give her a right to consume both
principal and proceeds, he knew not what he said.   To give abso-
lutely, is to give without restriction.   In this case, the word sur-
plus is the key to the meaning.   Would it consist of the uncon-
sumed profits or the unconsumed principal?   The former would
need no other power than that which springs from ownership; and
the delegated power was therefore applicable only to the princi
pal.   There can be no use of things which *ipso usu consumun-*

*tur;* but Mrs. Pennock was to have more than the use, and her power was to extend to so much of the personal estate bequeathed to her as should remain at her death.    Was it well executed?

Doe *vs.* Thorley settled the law that it could be executed only by will, because the word "leave" is inapplicable to a deed; and Whaley *v.* Drummond, cited 1 *Sugd. Pow.* 270, settled it that a power to be executed by will, cannot be executed by an act to take effect in the donee's lifetime.    Mrs. Pennock was bound to give all the children something; but she did not.    He left seven: Rebecca, Sarah, Isaac, (dead, living his mother) Martha, Ann Eliza, (dead, living her mother) Mary Ann, and George, only three of whom are mentioned in her will, which was not even an ostensible attempt to execute her power.    It contained no reference to it; for she treated the personalty bequeathed to her, as well as what she had drawn from it, as her own.    Her purpose was to dispose of it without restraint; and if it were necessary to consider the objection raised on that ground, it would be decisive.    An act which would be inoperative, except as an execution of a power, though done without reference to it, is allowed to take effect in the only way it can; still there must be, at least, a reference to the fund as a subject of disposal.    But Mrs. Pennock had property of her own to satisfy the bequests in her will, which contains no allusion to the property of her husband.

The children are not precluded, by their dealings with her, from asserting that there was not an execution of her power; for there is no estoppel from a recital; and if there were, the bequest to her is recited in the words of the will.    Nothing said in the deeds is inconsistent with their claim; and if any there were, yet being said in mutual ignorance, equity would disregard it.

But each of them is precluded to the extent of her advancement.    Satisfaction of the interest of an appointee, makes the donee of the power, if so intended by him, a purchaser of it, and gives him an unrestricted power to dispose of so much of the fund as his own.    Pitt *vs.* Jackson, 2 *Bro. C. C.* 91; Folkes *vs.* Western, 9 *Ves.* 456; Noel *vs.* Walsingham, 2 *Sim.* & *Stu.* 99; and Gower *vs.* Gower, 1 *Cox*, 53, are to the point.    The discrepance between those cases touches not the principle, but the evidence of intention necessary to bring the particular case within it; for in none of them is it pretended that the donee may not sink the interest of the child fer the benefit of the rest, or keep it afoot for the benefit of himself at his election.    Perhaps Mrs. Pennock took no thought of the subject; but there is no evidence that she intended to be burthened with any trust further than she could help it.    Each advancement is to come out of the share coming to the child by reason of the non-execution of the power.    It is necessary, therefore, to send the case to the master with direction to report the amount of the advancements separately, omitting

those made to grand children, if any; the value of the surplus of the testator's personal property unconsumed at Mrs. Pennock's death; and the value of that part of it which was included in her will.                                        So ordered.