Cunningham's Estate.

Argued October 31, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

266

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

*Dan T. R. Dickson,* for appellant, No. 207.

*John E. Winner* and *Edward O. Tabor,* with them *Floyd V. Winner,* for appellants, No. 208.

*James S. Crawford,* of *Patterson, Crawford, Arensberg & Dunn,* with him *Sion B. Smith,* for appellee, Nos. 207 and 208.

*Solis Horwitz,* with him *Lewis M. Alpern,* for trustee, appellee.

OPINION BY MR. JUSTICE LINN, November 25, 1940:

These two appeals, Numbers 207 and 208, from decrees of distribution were argued together. The appeal at No. 207 was by testator's son, Crawford B. Cunningham. After making certain disposition of property, which it is unnecessary now to mention, testator reached the residue of his personalty; this he gave to his wife and a trust company in trust, directing that it be divided into two equal parts to be "designated respectively as the vested half and the unvested half of the residue"; he directed that, on the death or remarriage of his widow, the "unvested" half should be divided into sixths and that one-sixth should be held in trust for each of his four children. No question concerning either the vested half or the four-sixths of the unvested half is presented. The dispute between the parties arises out of the twelfth paragraph of the will relating to the other two-sixths.

"Twelfth: The remainder of said unvested half of the residue shall, at the death or remarriage of my wife, pass per stirpes to my children or descendants living at the time of such death or remarriage, as under said law of intestacy, except that, so far as the law does not prevent, none of them shall be entitled to come into the actual enjoyment of any part of the corpus thereof, until he or she shall have attained the age of twenty-six (26) years,— the corpus remaining meantime in the hands of the trustees. As each child arrives at the age of twenty-one years, he or she shall be entitled to receive the proper share of the income, but shall not, before arriving at the age of twenty-six years, have power to anticipate, sell or assign either income or principal. When the first one of the participants arrives at the age of twenty-six years, the said trustees shall make a fair and equitable division in writing of the cash, securities or other property which shall constitute the remainder of said unvested half, into the proper number of parts. I prefer that this shall be done after conference with those of the parties interested who shall then be more than seventeen years of age, and that their consent to the method of division shall be secured if possible. In this as in other instances, at the right times the proper formal transfers of securities, etc., shall be made. In the matter of education and instruction I particularly direct that said trustee, and any guardians who may handle funds coming from my estate, shall comply with my wishes expressed in the 10th section[1] above; and I further authorize them to use, for the purpose of such education and instruction, principal where needed as well as income, both before and after the beneficiary shall arrive at the age of majority."

The widow died November 24, 1939. During her lifetime, on October 29, 1935, the appellant, Crawford B. Cunningham, then more than 26 years of age, assigned

---

[1] This tenth paragraph will be dealt with in disposing of the appeal at No. 208.

to Peoples-Pittsburgh Trust Company all his right, title and interest in his father's estate to the extent of $25,345.00. The consideration specified in the assignment was "as collateral security for my certain existing contingent indebtedness as endorser upon certain obligations to PEOPLES-PITTSBURGH TRUST COMPANY of Barnes Motor Company, a Pennsylvania Corporation, in the amount of Twenty-three Thousand Three Hundred Forty-Five Dollars ($23,345.00) as well as collateral security for a certain contemporaneous loan to Barnes Motor Company in the amount of Two Thousand Dollars ($2,000.00), in connection with which I contemporaneously become contingently liable as endorser."

The question is, Did appellant then have an assignable interest? The assignment was presented at the audit and distribution to the assignee was decreed. Another claim was presented by appellant's trustee in bankruptcy. On March 17, 1939, having filed a petition in bankruptcy, appellant was adjudicated bankrupt and has since been discharged. His trustee claimed for the excess of his interest over the amount due on the assignment to the Peoples-Pittsburgh Trust Company and distribution was decreed accordingly. The appellant now challenges the decrees on the ground that he had no assignable interest; that nothing could pass to the assignee or to the trustee.

On his behalf it is also contended, a contention which counsel for the assignee says is made for the first time in this Court, that the transaction culminating in the assignment was unconscionable and inequitable; this contention may at once be dismissed with the statement that a study of the record shows there is not the slightest evidence to support it.

It is of course necessary to ascertain and give effect to the intention of the testator as expressed in the whole will and codicil and we have no difficulty in understanding that testator meant that if appellant survived the

death or remarriage of his mother a share of "the remainder of said unvested half of the residue" would then "pass" to him. There is no doubt under our cases that the interest was assignable. The appellant refers to expressions in other parts of the will but nothing in them creates any doubt on his right to receive a share in the contingencies specified. The subject was adequately dealt with in the opinion filed by the learned court below; we need not repeat it; reference to the supporting authorities is sufficient: *Wickersham's Appeal*, 18 W. N. C. 36 (Pa. 1885); *Whelen v. Phillips*, 151 Pa. 312, 25 A. 44; *Phillips's Estate (No. 2)*, 205 Pa. 511, 55 A. 212; *Richardson's Estate*, 236 Pa. 136, 84 A. 670; *Carter v. Martin*, 307 Pa. 515, 162 A. 220; see also *Norris's Estate*, 329 Pa. 483, 492 et seq., 198 A. 142, and *Hirsh's Estate*, 334 Pa. 172, 178, 5 A. 2d 160; Restatement, Property (1936), section 162; Restatement, Trusts (1935), section 162.

The Bankruptcy Act provides: "The trustee of the estate of a bankrupt . . . upon his or their appointment and qualification, shall in turn be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition in bankruptcy . . . except in so far as it is to property which is held to be exempt, to all . . . (5) property, including rights of action, which prior to the filing of the petition he could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered. . . ."[2]

The word "transfer" is defined as follows: " 'Transfer' shall include the sale and every other and different mode, direct or indirect, of disposing of or of parting with property or with an interest therein or with the possession thereof or of fixing a lien upon property or upon an interest therein, absolutely or conditionally, voluntarily or involuntarily, by or without judicial pro-

[2] Section 70a of the Bankruptcy Act, as amended, 11 USCA section 110.

ceedings, as a conveyance, sale, assignment, payment, pledge, mortgage, lien, encumbrance, gift, security, or otherwise. . . ."[3]

Having, as we have held, an assignable interest, it passed pursuant to the Act of Congress to the trustee: *Robbins's Estate,* 199 Pa. 500, 49 A. 233; *Packer's Estate (No. 2),* 246 Pa. 116, 123, 92 A. 70. It is unnecessary to refer particularly to the cases on which the appellant relies on this branch of the argument; it is enough to say that those from this jurisdiction dealt with expectancies and not with contingent interests existing at the time of the assignment.

The appeal at No. 208 is by Edna Cunningham, assignee of Kenneth C. Cunningham, one of testator's children, and Edna Cunningham, Committee for Kenneth C. Cunningham, and complains that her exceptions to the schedule of distribution were overruled. The account showed that the trustees had paid to testator's widow between the date of his death, January 24, 1918, and the date of her death, November 24, 1939, the sum of $319,897.79, income derived from the unvested portion of the residue now under consideration. The ground of the exception was "that said amount of income was not necessary for the comfort or maintenance of the said Kate C. Cunningham, and was paid to the said Kate C. Cunningham by the accountant in violation of the terms and provisions of the decedent's will."

This appeal therefore involves reference to portions of the will not specifically referred to in disposing of the appeal at No. 207. By paragraph 7, testator devised certain real estate in trust, directing the payment of taxes, etc., from the net income, and provided "If there be not enough for these purposes, and there be on hand no proceeds of real estate sold, the deficiency may be supplied from the income from personal property mentioned in Section 10th of this Will." Later, in paragraph 7, he

---

[3] Section 1 of the Bankruptcy Act, as amended, 11 USCA section 1 (30).

provided that income not required for the purposes just mentioned "shall go toward providing a home for my wife and those of the family who may live with her. . . ." The presently important provision is, however, paragraph 10:

"While my wife shall live and continue unmarried, none of my children or descendants shall have any right or vested interest whatever to or in said unvested half of the residue, and my wife may use the issues, profits and income therefrom, in her discretion, for the comfortable maintenance of herself, and for the support, instruction and education of our children and descendants, or any of them. It is my earnest desire that all of our children and descendants shall have the opportunity of a good education, and of a reasonable amount of special instruction looking toward a profession. If anything should remain over from said income, I recommend that something should be applied to worthy charities, and toward helping others, whose opportunities are limited, to secure education."

At the close of paragraph 12, quoted in disposing of Appeal No. 207, testator referred to his wishes expressed in paragraph 10 and authorized the use of principal, if needed, as well as income for the "education and instruction" of his beneficiaries "before and after" attaining majority. In the 13th paragraph he provided that if his wife survived all his descendants "she shall continue to receive the income from said unvested half of the residue as long as she shall live and continue unmarried. . . ." In paragraph 15 he directed that no inventory or account should be filed "unless compelled to do so by order of court."

In the codicil he provided, "In connection with the paragraph marked Tenth in said Will, I desire that any balance of the income from the said unvested half of the residue, which may not be used as provided therein, shall, at the end of each year after my decease, be added to the corpus."

No evidence was taken to show whether, during the years mentioned, the widow expended all or only part of the income which was paid to her, or for what purposes she spent it, or how much, if any, remained, the learned court below holding, as we understand from what was said at the argument, that before evidence on the subject should be received, it was desirable to determine the question of law. The parties were heard and it was held that testator intended that his widow should receive the income with power to determine how it should be used.

In the tenth paragraph he expressly provided that during his widow's life, unmarried, none of his children or descendants should "have any right or vested interest whatever" in the property now under consideration, "the issues, profits and income" of which were given to his wife for the "comfortable maintenance of herself, and for the support, instruction and education of our children and descendants, or any of them."

The general rule[4] is that expressions for the support or maintenance of a beneficiary and the support, instruction and education of the beneficiary's children are considered explanatory of the object of the gift and not as vesting any interest in the children referred to; they are regarded as explanations of the motive for making the gift and not as limitations of it. See *Schuldt v. Reading Trust Co.*, 292 Pa. 327, 330, 141 A. 152; *Paisley's Appeal*, 70 Pa. 153, 158; *Cox v. Rogers*, 77 Pa. 160, 165; *Jauretche v. Proctor*, 48 Pa. 466, 471; *Biddle's Appeal*, 80 Pa. 258, 264; *Cressler's Estate*, 161 Pa. 427, 29 A. 90; *Mazurie's Estate*, 132 Pa. 157, 163, 19 A. 29; *Fisher's Estate*, 268 Pa. 405, 112 A. 17. The learned court below properly relied on these cases.

In each appeal the decree is affirmed, costs to be paid out of the fund for distribution.

---

[4] The origin of the rule for this Commonwealth will be found in several decisions growing out of the will of Isaac Pennock: *Coates's Appeal*, 2 Pa. 129; *McKonkey's Appeal*, 13 Pa. 253; and *Pennock's Estate*, 20 Pa. 268, setting aside decrees theretofore made.