Dickson Estate

Before Klein, P. J., Bolger, Lefever, Saylor and Shoyer, JJ.

SHOYER, J., auditing judge.—[After construing testator's will to the effect that there was no intestacy]
. . .

In any event, our decision is controlled by the previous ruling of our Supreme Court, 378 Pa. 48, under well established principles of res judicata. It appears from Wallace's Estate, 316 Pa. 148, and other cases that the three essentials for the strict doctrine of res judicata, as opposed to "law of the case", to apply are: (1) The question of law must be the same as was, or might have been, raised in the earlier proceeding; (2) the parties must be the same or in privity, and (3) the subject matter must be the same. In the present case all three of these elements are clearly present. (1) The question with respect to the construction of the will not only could have been raised but was actually raised and decided in the prior proceeding. (2) The parties in interest are the same. In the prior proceeding it was the life tenant opposed to three living nieces and the estates of four deceased nieces while in the present case the parties are the estate of the life tenant as opposed to two living nieces and the estates of five deceased nieces. (3) Finally, the subject matter in both proceedings was the principal of the estate.

The decision by our Supreme Court on the construction question was in no sense dictum but one of the alternative grounds of the decision. In fact, a reading of the Supreme Court opinion indicates that the decision on the construction point was the principal basis of the prior decision. However, it is not necessary to go this far. If a case is decided on two different grounds, it is authority for both propositions. If it could be argued that ground "a" is dictum because the case was also decided on ground "b", then the same could be said of ground "b" and we would end up with a case with two dicta and no decision. Plainly each ratio decidendi in such a case is entitled to equal dignity. This is supported by A. L. I. Restatement of The Law of Judgments §69, comment b, which reads in part:

*"Affirmance of a judgment which was based on alternative grounds.* If the judgment of the court of first instance was based upon two alternative grounds, either of which would be sufficient to support the judgment, and the appellate court holds that both of these grounds are sufficient, and accordingly affirms the judgment, the judgment is conclusive as to both grounds in a subsequent action on a different cause of action."

As to the requirement of identity of subject matter, the life tenant's personal representative could conceivably argue that the one additional seventh he is now claiming is a different fund. The auditing judge holds, however, that the fund is the same as to the entire amount claimed, the only difference being in the fractional portion of a *single* fund. The mere fact that a greater percentage of the same fund is now claimed does not make the fund different for the purpose of determining whether the requirement of identical subject matter is met.

Actually, however, the point is largely academic because even if the additional one-seventh were considered a separate fund, the life tenant's estate in the present proceeding would be bound by the doctrine of "law of the case" as exemplified by Lafferty's Estate, 209 Pa. 44, and Commonwealth v. Binenstock, 366 Pa. 519. The doctrine of "law of the case" is important only in those cases where res judicata does not apply because the fund before the court in the second proceeding is different from the fund in the earlier proceeding . Therefore, even if the prior decision were not res judicata as to one of the five-sevenths of one-half of the principal now in dispute, the disposition of that one-seventh would be covered by "law of the case".

I find that the question of an intestacy is res judicata and that there is no merit to the claim made, and that claimant has no standing. . . .

Opinion sur exceptions.

*J. Webster Jones,* for exceptant.

*MacCoy, Evans & Lewis* and *John E. Stevenson,* contra.

LEFEVER, J., November 7, 1958.—Samuel Dickson died on May 28, 1915. By his will he left the residue of his estate in trust to pay the income to his son, Arthur G. Dickson, for life. Arthur died March 17, 1957, without issue, thereby terminating the trust. The distribution of a portion of the corpus is in dispute.

The critical language appears in the second paragraph of decedent's will, viz.: "At the time herein fixed for the termination of the trusts hereby created . . . and if there shall be no children of my said son [Arthur] or issue of deceased children living at the time of his death, then to assign and transfer the share of my estate given by this paragraph to the children and issue if any of my said son Arthur G. Dickson to the nieces of my late wife, living at the time of my death."

When decedent died he was survived by seven nieces of his wife. Only two still survive. The learned auditing judge awarded equal one-seventh shares of the fund at issue to the living nieces and to the respective fiduciaries of the estates of the five deceased nieces. The executor of the estate of Arthur G. Dickson, deceased, excepts to the latter awards upon the theory that there was an intestacy as to the shares of the five deceased nieces, and that since Arthur was the next of kin his estate is entitled to these shares under the intestate laws.

Little need be added to the masterful adjudication of the learned auditing judge. As well stated therein: "The gift in default of issue is to 'the nieces of my late wife, *living at the time of my* [*i.e. testator's*] *death.*' (Italics supplied.) This needs no construction. The gift to each niece is contingent upon Arthur's dying without issue but is not contingent upon the niece's surviving Arthur. Hence the contingent interest passed

as part of the estate of each niece who survived testator but died thereafter and such interest has now ripened into enjoyment. It is difficult to imagine how the testator could have made any clearer his intention that the gift to each niece was contingent upon the niece's surviving the testator and Arthur's dying without issue. He left nothing to conjecture in spelling out the class of beneficiaries as nieces 'living at the time of my death'."

Exceptant urges that under the "pay and divide" rule our conclusion should be otherwise. However, as we have heretofore said: "In view of the difficulties involved in the application of the 'pay and divide' rule, we will not resort to it unless absolutely necessary. Here testatrix's clear intention governs": Krug Estate, 86 D. & C. 436, 439. See Bald Estate, 385 Pa. 176, 181. The questioned language in the instant will is simple and clear. Testator's intention is unmistakable. Hence, there is no need to resort to rules of interpretation.

Furthermore, the Supreme Court of Pennsylvania has interpreted the actual language at issue, viz.: ". . . if . . . the fact was proved that Arthur G. Dickson was incapable of having issue . . . it would not cause an intestacy in this case; since the gift to the nieces living at testator's death was contingent [citing cases] . . . *but transmissible* . . .": Dickson Estate, 378 Pa. 48, 51. Substantially the same issue and the same parties were involved. J. Webster Jones, Esq., counsel for Arthur G. Dickson in that case, made substantially the same oral and written argument as he presented to us as counsel for exceptant in the instant case. It would appear that the Supreme Court's decision is "res adjudicata" or, at least, "the law of the case". But even if the language of the Supreme Court were only dictum, and not binding upon us, we would unheistatingly adopt it because it is clear that under testator's

above quoted lucid and specific language the seven nieces who survived testator had transmissible interests in his estate and, therefore, there is no intestacy.

There is a final, fatal defect in exceptant's case. It is hornbook law that all of the assets of a bankrupt becomes the property of his trustee upon entry of a decree in bankruptcy. On May 28, 1932, Arthur G. Dickson was adjudicated a bankrupt by decree of the United States District Court for the Eastern District of Pennsylvania, no. 15736 in bankruptcy. Accordingly, if he had any interest under the intestate laws in testator's estate, it became an asset of the bankrupt estate. See Cunningham's Estate, 340 Pa. 265. There is no evidence that any intestate interest in the present estate was reconveyed to him. On the contrary, his interest *under the will of Samuel Dickson* was sold, assigned and conveyed by the trustee in bankruptcy to Henry S. Drinker, Jr., by instrument dated November 28, 1932, and reconveyed by the latter to the Fidelity-Philadelphia Trust Company, upon spendthrift trust for Arthur G. Dickson, for life, and upon his death for life to his wife, Janet L. B. Dickson, who predeceased him. There is no provision in this trust instrument for disposition of any remainder after the death of Arthur G. Dickson and his wife, nor for the inclusion of any intestate interest in the estate of Samuel Dickson. A study of the various instruments indicates that neither the trustee in bankruptcy, nor Henry S. Drinker, Jr., nor the Fidelity-Philadelphia Trust Company had in contemplation the transfer of any intestate rights of Arthur G. Dickson in the instant estate. Although omnium gatherum clauses appear in the various instruments, it is doubtful that such an interest was included. In any event, there is no express conveyance of this interest to Arthur G. Dickson or to the executor of his estate. We reiterate

the statement of Judge Bolger, speaking for the court, when this case was before us in 1953: "What, if anything, was done by the bankruptcy trustee about the bankrupt's possible interest in an intestacy does not appear. In the absence of explanation by exceptant we must assume it became and remains the property of his creditors or of the trustee under the deed: Packer's Estate (No. 2), 246 Pa. 116. Certainly it nowhere appears that exceptant is possessed of it": Dickson Estate, 82 D. & C. 260, 262. Arthur G. Dickson's executor stands in no better position than he.

For all of the foregoing reasons, the exceptions are dismissed and the adjudication is confirmed absolutely.