# Cressler's Estate. Barner's Appeal. Maglaughlin's Appeal.

*Will—Vested and contingent estates.*

Testator gave and devised unto his daughter "for the support of herself and her children," one moiety of his plantation. He further directed that so long as his real estate remained undivided, his executors should in each and every year from the time of his decease pay unto his daughter, "or, in the event of her death, to the use of her children, the one-half of the clear yearly proceeds of my said real estate above mentioned." He also directed that if his executors should think it advisable and for the interest of his said daughter, and her children, "to dispose of her share or part of said tract of land with the other moiety of the same or separately," they should have power to do so. *Held,* that the daughter took a vested estate in fee in one half of testator's real estate.

*Trust—Sheriff's sale of interest under will.*

The daughter in the above case by her will gave her residuary estate to

be divided among her children equally. She further directed that the interest of one of her sons should " be held by my executor in trust, the interest and income thereof " to be paid to said son. During the mother's lifetime the interest of the son in his mother's estate was sold at sheriff's sale. *Held*, that the purchaser took no title.

Argued April 24, 1894. Appeals, Nos. 99 and 241, Jan. T., 1894, by John L. Barner, executor of C. Long, deceased, and L. G. Maglaughlin et al., from decree of O. C. Cumberland Co., dismissing exceptions to auditor's report, distributing estate of Elizabeth Cressler, deceased. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to auditor's report.

The auditor, W. Trickett, Esq., reported as follows:

" 1. George Klippinger died Feb. 22, 1843, testate, seized of certain real estate. Two children survived him, and, but for the will, would have been his only heirs, viz.: Sophia, intermarried with Joseph Cressler, and Elizabeth, intermarried with John H. Cressler.

" 2. The will of George Klippinger directed, inter alia, that his executors should, within five years from his death, cause the real estate of which he died seized to be divided into two equal parts by the appointment for that purpose of five or seven suitable men, and ordered that the purparts should be allotted by them to the devisees, and declared that the " division, valuation and allotment " should be final.

" 3. Pursuant to this direction of the will, five persons were appointed on March 12, 1844; and on March 23, 1844, the persons so appointed made a division of the land into two parts, one containing 237 acres and 144½ perches, which they allotted to Elizabeth Cressler, the other containing 297 acres and 144½ perches, which they allotted to Joseph Cressler and Sophia, his wife. They valued each of these purparts at $7,600.

" 4. Elizabeth Cressler took possession of her purpart, retaining it without alienation till her death, which occurred on Monday, Feb. 20, 1888. She died testate, and there survived her, of nine children who had been born to her, Daniel Cressler, George W. Cressler, Susan E., wife of H. C. Bomberger. Her daughter Victoria, married to David Griffith, had died Aug. 24, 1870, leaving to survive her a son John, who is still alive, and her husband, David.

"5. At the time of the writing and probate of George Klippinger's will, his daughter Elizabeth had four children [three of them since deceased]. After the death of George Klippinger there were born to Elizabeth [four more children, three of them since deceased].

"6. On Oct. 20, 1885, an inquisition finding Mrs. Elizabeth Cressler a lunatic was confirmed by the court of common pleas of Cumberland county, and Alexander Bishop was appointed her committee. At this time Alexander Bishop occupied the land of Elizabeth Cressler, derived from her father George Klippinger, and he has remained a tenant thereof to this time, farming on shares since her death.

"7. The will of George Klippinger contains the following: 'I give and devise unto my daughter Elizabeth (intermarried with John H. Cressler) for the support of herself and her children, one moiety of my plantation and tract of land situate in Southampton township above mentioned, with the appurtenances, containing about 500 acres of land.' Immediately following is a devise ' unto my son-in-law, Joseph Cressler and to my daughter, Sophia, his wife, and to their heirs, the other moiety of my plantation and tract of land above mentioned.' Then follows a direction that, while the real estate remains undivided, and undisposed of, ' my executors, hereinafter named, shall, in each and every year from the time of my decease, pay unto my said daughter Elizabeth, or, in the event of her death, to the use of her children, the one half of the clear yearly proceeds of my said real estate above mentioned.' Then follows a direction to the executors to have the real estate divided within five years from the testator's death into two equal parts, the appraisers to ' allot to each their respective part or share.' Following this is: ' I desire further, that should my said executors think it advisable and for the interest of my said daughter Elizabeth and her children to dispose of her share or part of my said tract of land, with the other moiety of the same or separately, I do hereby authorize and empower them so to do, either at public or private sale and in part or in whole, and to execute and deliver such conveyance as will be necessary to pass the title to such purchaser or purchasers for the same, and the proceeds of such sale or sales to be by them, my said executors, safely invested in other real property, or loaned out upon

interest, where the same will be safe, and the yearly interest thereof be punctually applied to the use of my said daughter Elizabeth and her children.' After this comes: 'and as touching all the rest, residue and remainder of my estate, real and personal, of whatever kind or nature soever the same may be, I give and devise the same unto my daughter Elizabeth and to her children, and to my son-in-law Joseph Cressler and his wife Sophia and their children share and share alike.'

" 8. The will of Elizabeth Cressler provides: 'First. I direct that all proper privileges, rights and claims honestly and justly belonging to my said husband John H. Cressler shall be duly respected and allowed so far as they affect my estate. Subject to this, I direct that all my estate of whatsoever kind or description shall be divided equally between my children share and share alike, subject however to the after provisions of this my will. The lineal descendants of any child, however, either now dead or who may hereafter die in my lifetime, always to stand in the place of the parent and to receive the proper proportion.

" ' Second. I direct, at the death of my said husband, that my real estate of every kind and description and however held and wherever situated, shall be sold and the proceeds divided as I have above directed.

" ' Third. As to any interest and estate which my son Daniel may take under this my will, I direct the same to be held by my executor . . . . in trust, the interest and income thereof to be paid to said Daniel. . . .

" ' Fourth. As to the share of my grandson, John M. Griffith ' . . . .

" The will appointed the testatrix's husband, John H. Cressler, executor. He dying before his wife the present administrators c. t. a. were appointed.

" 9. To No. 11 Jan. T., 1867, F. Grove & Co. recovered a judgment in the court of common pleas of Cumberland county against Daniel Cressler & Co. for $447.04. On an alias fi. fa. issued Aug. 23, 1871, upon this judgment, a levy was made upon the interest of Daniel Cressler and, on an alias venditioni exponas, issued Jan. 24, 1872, the sheriff sold this interest to Charles E. Maglaughlin for $10.00. P. New, formerly of the firm of F. Grove & Co., had, as a new firm of P. New & Co.,

become owner of the property of F. Grove & Co. (Grove retiring), and Charles E. Maglaughlin, as attorney for P. New & Co., caused the executions aforesaid to issue and purchased the interest of Daniel Cressler for them, holding it as a trustee for them. P. New & Co. paid the costs of the execution and sheriff's sale and also the purchase money bid at the sale. Ample and distinct admission by Mr. Maglaughlin that he had bought the interest and was holding it for P. New & Co. is in writing signed by Mr. Maglaughlin. In a letter dated May 14, 1873, to P. New & Co., Mr. Maglaughlin says: 'Then I levied upon what I believe to be an interest of Cressler in a valuable farm left by his grandfather. This interest (if it is an interest in the land) is worth several thousand dollars. After some negotiation about arranging the claim, which Cressler subsequently declined to make any effort to fix, I sold this interest in land at sheriff's sale and bought it in myself for ten dollars. . . . Whatever title this sheriff's sale conveyed is held by me for your benefit, and I really believe that the sale did convey a substantial title to an interest which will be worth at the death of Cressler's mother (an old and feeble woman) $1,500 or $2,000. . . . Of course the costs arising on the suit and from the executions are a legal claim against you as the plaintiff in the case, and as having been incurred on your behalf.' On May 20, 1873, P. New & Co. drew and sent their check payable to the order of J. K. Foreman for $71.36, on which the sheriff, Foreman, obtained the money. On March 27, 1885, P. New, trading as P. New & Co., Peter New and Regina his wife, by deed conveyed to Christian Long of Shippensburg all the undivided interest of Daniel Cressler, which Charles E. Maglaughlin as the attorney of P. New & Co. had purchased for them. Charles E. Maglaughlin, married Feb. 24, 1863, and had two children: Wilmer K., born Dec. 25, 1864, and Maud L., born Feb. 20, 1867. Mr. Maglaughlin died intestate April 29, 1874, leaving to survive him these two children and a widow, all of whom are still alive. . . .

" 24. There are exceptions to the account of the administrators c. t. a. of Elizabeth Cressler. The first alleges that certain debits should not appear in the account because they are not proper charges, 'being the proceeds of grain raised on real estate not belonging to Elizabeth Cressler,' which the said admin-

istrators had no right to receive and which belonged to other parties under the will of George Klippinger, deceased. The second exception denies the right of the administrators to 'meddle' with the real estate or its proceeds. The third exception denies the right to credits in so far as they consume the amounts with which the administrators are debited, to which debits the first raises exception.

" It was agreed however, before the auditor, that he should consider the question of title to the land and award the proceeds of it to the persons found to be its owners.

### " CONCLUSIONS OF LAW.

" 1. Under the will of George Klippinger, Elizabeth Cressler took a fee in the land devised ; Elizabeth continuing to own it till her death, it passed by her will.

" 2. The sheriff's sale of Daniel's hypothetical interest as land, in 1872, sixteen years before Elizabeth Cressler's death, passed no interest. If it had, the ostensible purchaser, Charles E. Maglaughlin, would have held the interest as trustee for P. New & Co. and then for Christian Long, grantee of P. New & Co., and this trust would have been enforceable.

### " DISCUSSION OF LAW.

" 1. The estate of Elizabeth Cressler under the will of George Klippinger : If the provision in George Klippinger's will first quoted stood alone, unqualified by the dispositions in other parts of the will, what estate would it give to Elizabeth ?

" This will was written in 1843, and is therefore subject to the operation of § 9 of the act of April 8, 1833, P. L. 249, that ' all devises of real estate shall pass the whole estate of the testator in the premises devised, although there be no words of inheritance or of perpetuity, unless it appear by a devise over, or by words of limitation, or otherwise, in the will, that the testator intended to devise a less estate : ' 2 Bright. Purd. 1711, pl. 10. The testator having a fee, he would be considered as disposing of it in this clause. To whom ? The gift is ' to my daughter Elizabeth.' Prima facie, then, the fee is given to her. Does the testator's expression of the inducement to make the devise, of the end which he believed and desired the devisee to be able to accomplish by it, reduce or

qualify the estate ?   This end is ' the support of herself and her children.'   The purpose in almost every devise is that the land shall contribute to the support of the devisee, and, if he or she has children, to the support of such children.   Will the expression of this purpose or expectation diminish or modify the estate which, but for it, would unquestionably have passed ?   We cannot think so.   When a life estate is given to a widow for the ' support of herself and my daughter ' it is not reduced nor affected with a trust for the daughter by this expression of the purpose : Dale v. Dale, 13 Pa. 446 ; Paisley's Ap., 70 Pa. 153 ; Mazurie's Est., 132 Pa. 157 ; Haskins v. Tate, 25 Pa. 249. ' We think,' says SHARSWOOD, J., in 70 Pa. 153, ' that the words which express the object for which the devise of the entire property was made to the wife for life, meant to repose that discretion in her, did not vest any present interest in the children as cestuis que trust of any particular share or shares, and in that respect the principles of construction adopted in Pennock's Estate, 8 Harris, 268, are applicable.'

" If the bestowal of a life estate upon a mother for the support of the children creates no trust affecting that life estate, it is impossible to see how the bestowal of what would, but for the expression of the purpose to provide a support for children, be a fee, becomes a trust because of such expression.   In one case the life estate is given to the mother for the support of herself and her children, but the children do not thus become equitable or legal co-owners ; in the other case the fee is given to the mother for the support of herself and her children ; how do they become legal or equitable co-owners ?   If it is possible to give an estate of a certain magnitude (e. g., a life estate) for such purpose without making the designed beneficiaries co-owners, is it not possible to give a still larger estate (e. g., a fee) for a similar purpose with a similar exclusion of co-ownership ?   The expression of a desire or expectation will not convert a devise into a trust unless it appears that the testator intended not to commit the estate to the discretion of the devisee : Good v. Fichthorn, 144 Pa. 289 ; Burt v. Herron, 66 Pa. 400 ; Hopkins v. Glunt, 111 Pa. 287 ; Bowlby v. Thunder, 105 Pa. 173.

" Nor are we able to persuade ourselves that a legal life estate was given to Elizabeth Cressler and a legal remainder to

her children. Had the devise been to Elizabeth and her children and had she had no children, the rule in Will's Case might have operated, Elizabeth taking a fee tail converted by statute into a fee simple : Will's Case, 6 Rep. 17 ; see Cote v. Bonnhorst, 41 Pa. 243 : 2 Jarman, Wills, 39 (Little, Brown & Co.'s ed. of 1881). But as Elizabeth had children this rule is not applicable. The principle has been recognized that a devise to a mother and her children, of whom she has some when the devise is made, constitutes them tenants in common : Will's Case, 6 Rep. 17 ; Graham v. Flower, 13 S. & R. 439 ; McKeehan v. Wilson, 53 Pa. 74. Similarly a conveyance between W. and S. 'in trust for herself and her children,' granting unto the said S. 'in trust for herself and her children and unto their heirs and assigns,' made the ten children and S. tenants in common, each taking an eleventh : Shirlock v. Shirlock, 5 Pa. 367. But as the devise of George Klippinger is not to Elizabeth and her children, nor to Elizabeth in trust for her children, the words 'for the support,' etc., not making a trust, the hypothesis of a cotenancy between Elizabeth and the children is excluded. That successive estates were given to them finds no warrant in the testamentary language already cited.

" Following the devise already quoted, the testator's words are : 'I give and devise unto my son-in-law, Joseph Cressler, and to my daughter Sophia, his wife and to their heirs the other moiety of my plantation and tract of land above mentioned.' The testator then orders that so long as his real estate remains undivided and undisposed of, 'my executors . . . . shall in each and every year from the time of my decease pay unto my said daughter Elizabeth, or in the event of her death to the use of her children, the one half of the clear yearly proceeds of my said real estate above mentioned.'

" 'In the event of her death' may possibly refer to death before the testator, Caldwell v. Skilton, 13 Pa. 152 ; Fahrney v. Holsinger, 65 Pa. 388; Stevenson v. Fox, 125 Pa. 568; King v. Frick, 135 Pa. 575 ; McCullough v. Fenton, 65 Pa. 418, 428 : Karker's Appeal, 60 Pa. 141 ; Mickley's Appeal, 92 Pa. 514 ; or it may mean death before the division of the estate. If the latter, it may have been predicated on the assumption that Elizabeth would not before that time have aliened the land or that she should not have the power to alien

it. A restraint on alienation during life after a fee is given is void: Williams v. Leech, 28 Pa. 89; Naglee's Appeal, 33 Pa. 89; Jauretche v. Proctor, 48 Pa. 466; McWilliams v. Nisly, 2 S. & R. 513. Even if we infer an intended restraint on alienation during the five years, we cannot find in this provision, operative in fact for slightly more than one year only, in favor of children, sufficient to justify the construction that only a life estate is given to Elizabeth.

After the clause just commented upon, is a direction to the executors to cause a partition of the land into two equal parts. This power of partition by arbiters is not inconsistent with the existence of a fee in the devisees. Lebling's Estate, 27 W. N. 161. It operates upon the interest of Joseph Cressler and his wife Sophia, and their heirs, which is unquestionably a fee simple.

The clause following the provision for partition contains (1) a power of sale in the executors; (2) a power and duty to invest the proceeds of Elizabeth's half. Do these or either of them coerce the conclusion that Elizabeth takes but a life estate?

" The power to sell is not limited to Elizabeth's part. The executors may sell her half ' with the other moiety of the same or separately.' This could not have meant that, after the partition already provided for, the part allotted to Joseph and his wife could be sold along with that allotted to Elizabeth. But prior to such partition the power extended to the sale of both purparts. Now it is undisputed and we think indisputable that Joseph and wife take a fee. If then the power to sell is not inconsistent with their fee it is not inconsistent with a fee in Elizabeth. Besides the presence of a power of sale is no more consonant with a fee in remainder (e. g., in Elizabeth's children) than with a fee in possession in Elizabeth.

" The trust in the executors is a trust affecting the proceeds. It begins to operate only in case the power to sell is exercised. On conversion the executors are to safely invest the proceeds in other land or loan them out upon interest. When the proceeds are reinvested in land the trust ipso facto terminates. It continues only when they are put out at interest. In that case the yearly interest is to be punctually applied to ' the use of my said daughter Elizabeth and her children.' How long? Dur-

.ing Elizabeth's life? During the children's lives? It does not appear that it is to last during Elizabeth's life only. Yet it cannot go on indefinitely. Some of the children of Elizabeth were not born when this will went into effect. Is a trust created, despite the principle of the rule against perpetuities, for these lives not in being?

" At all events we do not feel warranted in deducing, from the creation of a trust for Elizabeth and her children whose duration is vague, under which the relative rights of Elizabeth and her children are obscure, and whose rise into operation is dependent on a discretion of the executors which has never been exercised, the inference that the Klippinger will created in Elizabeth an estate less than a fee simple.

" It may be worth while to note that in the last quoted clause the share of which the executors are authorized to dispose is termed ' her' (Elizabeth's) share. In the residuary clause of the will the testator gives the remainder of his estate ' unto my daughter Elizabeth and to her children and to my son-in-law Joseph Cressler and his wife Sophia and their children, share and share alike.' He surely intended not a per capita division between all these persons, but a division into two parts, one for Elizabeth and her children, the other for Joseph Cressler and wife and their children. It is difficult to suppose, in the absence of conceivable motive, that the testator intended to make the children tenants in common with the parents of the residuary property or to restrict the interest of the parents in this property to a life estate and limit upon it a remainder to the children, while he plainly gave the fee to Joseph Cressler and his wife Sophia in the clause above quoted. The grouping of the children with the parents seems to have been loosely done with no intention to give them a legal interest in the property.

" In a case of doubt as to the estate given it is necessary to remember the rules concerning the bias of the courts in the construction of wills. ' In case of doubtful construction,' says LOWRIE, J., ' the law leans in favor of an absolute, rather than a defeasible estate; . . . . of the first rather than the second taker as the principal object of the testator's bounty, and of a distribution as nearly conformed to the general rules of inheritance as possible: ' Smith's Ap., 23 Pa. 9. ' The first taker is always,' says SHARSWOOD, C. J., ' the first object of the testa-

tor's bounty and his absolute estate is not to be cut down to an estate for life . . . . without clear evidence of such an intent:' Mickley's Ap., 92 Pa. 514; King v. Frick, 135 Pa. 575; Stevenson v. Fox, 125 Pa. 568; Fitzwater's Ap., 94 Pa. 141.

"Elizabeth Cressler was the daughter of the testator. Though she had at his death four children, of whom two died afterwards, before her and without issue, she had several born after his death, whom he had consequently never seen. There is an appreciable presumption against the testator's intending to give the fee to these children, born and unborn, in preference to his own daughter.

"We conclude that Elizabeth Cressler takes a fee in the land devised to her.

Daniel Cressler's Interest: "The sheriff's sale of Daniel Cressler's share in the land, on an alias venditioni exponas, conveyed to the purchaser, Charles Maglaughlin or his cestui que trust, no title. When that sale occurred Daniel had no title in the land. It was his mother's. Even had it taken place after his mother's death it would have conveyed no interest, for her will converted the land into personalty and gave Daniel the interest of his share of the principal for his life, so as not to be liable for his debts. Had a title been acquired by Charles Maglaughlin it would have been simply as trustee for his client, P. New & Co. The purchase money was, at Mr. Maglaughlin's request, and on his assertion in writing that he had bought for the client, paid to the sheriff by the latter. The act of April 22, 1856, § 6, P. L. 533, forbids the enforcing of any resulting trust (which this was) beyond five years from the accruing of such trust 'with the right of entry.' But as, if Mrs. Cressler had only a life estate, the right of entry did not accrue to P. New & Co. or to Maglaughlin till her death in 1888, this limitation would not apply. Charles Maglaughlin was not in possession nor was he otherwise enforcing any pretended rights as against Daniel Cressler or P. New & Co. until 1888. The latter could not have maintained ejectment. Even under the act of 1856 we think P. New & Co. could enforce the trust as against Charles Maglaughlin, but the act of 1856 is repealed with respect to attorneys at law by that of March 27, 1865, P. L. 56. Though this act does not apply to a purchaser from an attorney having no notice of the trust, Barret v. Bamber, 81 Pa. 247,

an heir or devisee of such attorney, not being a purchaser for value, would be incapable of claiming the immunity of a purchaser. The trust in Charles Maglaughlin, which is clearly enough admitted by him in writing, is enforceable against him and his widow and heirs. But for reasons stated above, no title passed to Charles Maglaughlin, or to P. New & Co. or to C. Long, P. New & Co.'s grantee."

Exceptions filed by both parties appellants were dismissed by the court in the following opinion by SADLER, P. J.:

" We find no just reason to complain of the findings of fact made by the auditor nor of the conclusions of law at which he has arrived. If the devise of land by George Klippinger to his daughter is uncertain as to its meaning, it was proper for the auditor to determine as he did. The devise of the one moiety of the land of the testator was to his ' daughter Elizabeth.' One half of his residuary estate was bequeathed to her; and the same manner is used as in the bequest of the other half to his daughter Sophia and her husband, Joseph Cressler. Provision was made for the partition of the land, in which contingency ' each ' was to be allotted a ' part or share.'

" In so far as the distribution of the balance in the hands of the accountants is concerned, there can be no doubt about the jurisdiction of the court or the authority of the auditor appointed by it to determine who are entitled to it. To do this according to law, it became necessary to find in whom the title of the land was. All parties were before the auditor in person or by counsel and made claim to participate in the distribution. It does not appear that any objection was made during the hearings before the auditor that there was no power in the orphans' court to dispose of the questions which arose before the auditor.

" We are well satisfied that the purchase made by C. E. Maglaughlin, Esq., now deceased, was for his clients, and that he took and held the same in trust for them, to wit, P. New & Co. The determination of the auditor is in accordance with the facts and the law applicable thereto."

*Errors assigned* were dismissal of exceptions to auditor's report, quoting them.

*E. W. Biddle* and *John Hays,* for appellant in John L. Barner's Appeal, cited, on the question of the vesting of the interest of Elizabeth Cressler's children under the will of her father: Miller's Ap., 113 Pa. 359; Saxton v. Mitchell, 78 Pa. 479; Hancock's Ap., 112 Pa. 532; Baker and Wheeler's Ap., 115 Pa. 590; Wright's Ap., 89 Pa. 67; Biddle's Ap., 99 Pa. 525; Middleswarth's Admr. v. Blackmore, 74 Pa. 414; Newbold v. Boone, 52 Pa. 167; Snively's Exrs. v. Stover, 78 Pa. 484; Sheetz's Ap., 82 Pa. 213; Sheetz's Est., 32 Pa. 263; Oyster v. Oyster, 100 Pa. 538; Oyster v. Knull, 137 Pa. 448; Dale v. Dale, 13 Pa. 446; Paisley's Ap., 70 Pa. 153; Mazurie's Est., 132 Pa. 157; Haskins v. Tate, 25 Pa. 249; Kinsey v. Lardner, 15 S. & R. 192; McClure's Ap., 72 Pa. 414; Minnig v. Batdorff, 5 Pa. 503; Chew's Ap., 37 Pa. 23; Ross v. Drake, 37 Pa. 373; Fetrow's Est., 58 Pa. 424; Rudebaugh v. Rudebaugh, 72 Pa. 271.

*M. C. Herman, J. A. C. McCune* with him, in Barner's appeal, cited: Dale v. Dale, 13 Pa. 446; Paisley's Ap., 70 Pa. 153; Mazurie's Est., 132 Pa. 157; Haskins v. Tate, 25 Pa. 249; Good v. Fitchthorn, 144 Pa. 287; Hopkins v. Glutt, 111 Pa. 287; Bowlby v. Thunder, 105 Pa. 173; Pennock's Est., 20 Pa. 266; Burt v. Herron, 66 Pa. 400; and cases cited by the auditor.

*H. S. Stuart* and *Edward B. Watts, Samuel Hepburn* with them, for appellants, L. G. Maglaughlin et al., cited, on the question of Elizabeth Cressler's interest: Guthrie's Ap., 37 Pa. 9; Buffar v. Bradford, 2 Atk. 222; Huber's Ap., 80 Pa. 348; Affolter v. May, 115 Pa. 54; Gernet v. Lynn, 31 Pa. 97; Shirlock v. Shirlock, 5 Pa. 367; Cook v. Cook, 2 Vern. 545; Hatterley v. Jackson, 2 Strange, 112; Barnes v. Provost, 4 Johns. 66; Kinsey v. Lardner, 15 S. & R. 192; Tatem v. Tatem, 1 Miles, 309; Crawford v. Ford, 7 W. N. 532; Womrath v. McCormick, 51 Pa. 504; Manderson v. Lukens, 23 Pa. 31; Provenchere's Ap., 67 Pa. 469; McKee's Ap., 96 Pa. 277.

*E. W. Biddle, John Hays* with him, for appellee, in Maglaughlin's Appeal, cited McGettrick's Ap., 98 Pa. 9.

## BARNER'S APPEAL.

PER CURIAM, May 7, 1894:

The questions presented in this case have been so fully considered and accurately disposed of by the learned auditor that further discussion of them is unnecessary. We think the decree should be affirmed on his report and the opinion of the court below.

Decree affirmed and appeal dismissed with costs to be paid by appellant.

## MAGLAUGHLIN'S APPEAL.

PER CURIAM, May 7, 1894:

An examination of this record, with special reference to the questions presented by the specifications of error, has satisfied us that the learned auditor's findings of fact, as well as his conclusions of law, are substantially correct. The questions involved have been so fully and carefully considered by him that little, if anything, can be profitably added to what has been said in his report. We cannot do better than to affirm the decree for the reasons therein stated.

Decree affirmed on the auditor's report and appeal dismissed with costs to be paid by appellants.