# Jauretche *versus* Proctor.

*Construction of will.*— *What words will pass absolute property in real estate.*

Where a testator named his wife as "my sole and only heir of all my property, present and future, as well movable as real estate, and personal property, which I may possess at my death," with a proviso that she was "not to divest herself of what I may leave her until after her death," and providing further, that at her death, "what I may have left her, that is to say, the residue, is to be divided in equal shares among our children," *Held,* that the wife took the real estate of deceased absolutely, and was able to convey the same in fee.

CERTIFIED from the Supreme Court at *Nisi Prius.*

This was an action of covenant, by Matilda Jauretche against John W. Proctor, in which the following case was stated for the opinion of the court:—

"Peter Jauretche, domiciled in the city of Philadelphia, died in the year 1853, seised in fee simple of a certain three-story brick messuage and lot of ground, situate on the west side of Eleventh street, at the distance of seventy-nine feet northward from Pine street, in the said city, containing in front on said Eleventh street nineteen feet six inches, and extending of that width in depth westward one hundred and twenty feet, more or less, together with the free use and privilege of a certain two-feet wide alley and watercourse, running northward from said lot over and across the western end of Captain Julius's ground, and also of a certain four-and-a-half feet wide alley and watercourse running westward therefrom to Quince street, being the same premises which Francis J. Troubat, by deed, made the 16th day day of February 1852, recorded in Deed Book T. H., No. 8, p. 59, granted and conveyed unto the said Peter Jauretche, his heirs and assigns.

The said Peter Jauretche, before his death, made his last will in writing, in the French language, bearing date the 25th day of March 1850, duly proved and registered in the proper office at Philadelphia, by which he disposed of, or is alleged to have disposed of, all his estate, real and personal, including the premises above mentioned. A copy of the said will in the French language, marked A, and a copy of a translation thereof, made

[Jauretche *v.* Proctor.]

in the English language by Mr. Davis, a sworn interpreter, and filed in the register's office with the original will, marked B, and a translation of said will in the English language, agreed upon by counsel, marked C, are severally hereto annexed, and made part of the case stated.

Matilda Jauretche, the widow of said Peter Jauretche, named in his will, and the plaintiff in this suit, asserting herself to be, under the provisions of the said will, well seised in fee simple of the premises above mentioned, made and entered into an agreement in writing with the defendant, John W. Proctor, dated the 17th day of October 1864, whereby she agreed to convey and assure to him, or to such person as he should request, in fee simple, the premises above mentioned, for the price of ten thousand five hundred dollars; and the said John W. Proctor agreed to pay for the said premises the said sum of ten thousand five hundred dollars, upon receiving a good, marketable, and sufficient title in fee simple to the same.

The said Matilda Jauretche, the plaintiff, in fulfilment of her said agreement, has offered to execute and deliver to the said John W. Proctor the defendant, or to such person as he may direct, a fee-simple deed in the usual form, for the said premises; but the said defendant has refused the receive the same in execution of the said agreement, alleging that the said plaintiff does not, under the said will, show a good title in fee simple in herself to the said premises.

If the court shall be of opinion that, under the will of the said Peter Jauretche, the said plaintiff is entitled to a present estate in fee simple in the said premises which she can lawfully convey and assure to a purchaser, then judgment is to be entered for the said plaintiff in the sum of five hundred and ten dollars; but, if the court shall be of a contrary opinion, then judgment is to be entered for the said defendant."

The translation of the will agreed upon by the counsel in the cause was as follows:—

"In the name of God, Amen.—I, Peter Jauretche, a native of France, residing in the city of Philadelphia, state of Pennsylvania, merchant by profession, being in perfect health of mind and body, but not knowing the moment at which I may be summoned before my Creator, this is the exposition of my last wishes, revoking every other will that I may have made.

"Article 1. After payment of my debts, I name my wife Matilda, my sole and only heir of all my property, present and future, as well movable and real estate as personal property, which I may possess at my death.

"Article 2. The plantation which I have at Cambo, with its dependencies, which is now under the charge of Mr. Montluc, of Bayonne, if she can do otherwise, I desire shall not be sold.

[Jauretche *v.* Proctor.]

"Article 3. She is not to divest herself of what I may leave her until after her death.

"Article 4. At the death of my above-named wife, what I may have left her, that is to say, the residue, is to be divided in equal shares among our children.

"I name for executrix of my above wishes my wife, with Mr. Chs. S. Carstairs, executor.

"In faith of which I have signed the present will this twenty-fifth day of March, of the year eighteen hundred and fifty, at Philadelphia, state of Pennsylvania.

("Signed)          "PETER JAURETCHE."

The learned judge, then sitting at *Nisi Prius*, delivered no opinion, but ordered judgment to be entered for plaintiff; which was the error assigned.

*C. Guillou*, for plaintiff in error.—The testator's intentions are to be found within the four corners of the will: Hunter's Estate, 6 Barr 107. No rule of law has a more ancient origin than that if a testator expresses his intention defectively, by not using technical and artificial terms, yet, if his intention can be collected from his will, the law, however defective the language may be, will construe his words according to his intention.

Can there be any doubt as to M. Jauretche's wishes? The third article is a clear prohibition against her parting with the property in any way during her life, and the fourth is equally clear in forbidding any testamentary disposition, since, at her death, the property passes to the children.

The 19th section of Act of 8th April 1833 (Brightly's Purd. Dig. 1017), provides that "all devises of real estate shall pass the whole of the testator's estate without words of inheritance, unless it appear by a devise over, or by words of limitation, or otherwise in the will, that the testator intended to devise a less estate." The plaintiff submits that it does appear by the devise over and otherwise of the will (viz., by 3d article), that the testator did not intend to give the fee.

The word "residue," in 4th article, is synonymous with "surplus," as defined in Pennock's Estate, 8 Harris 268, and designates whatever may be left unconsumed or undisposed of by the widow under the previous devise to her, and her lawful restricted enjoyment of the property thereunder. It does not enlarge the devise, nor in any way remove the restrictions imposed. In ascertaining what "residue" the testator intended that his children should receive, the first element of consideration is the prohibition against any alienation from them by deed or by will.

The law does not lean towards, but resists a construction by which the inheritance is to be taken from the heirs: French *v.* McIlhenney, 2 Binn. 19.

[Jauretche v. Proctor.]

Devise of all testator's property, real and personal, to his wife, during her natural life, to do and dispose of as she may think best, only confers a life estate: Fisher v. Herbell, 7 W. & S. 63.

*G. W. Biddle*, for defendant in error.—The judgment in favour of the plaintiff is right, for the following reasons:—The whole plan of the will shows the intention of the testator to confer the absolute ownership of his estate upon his wife. In the 1st article he names her the sole and only heir of all his property, present and future, as well realty as personalty, of which he may be the owner at the time of his death. Even before the Act of 1833, this language would have conferred a fee upon Mrs. Jauretche: Ferguson v. Zepp, 4 W. C. C. R. 645; Dice v. Sheffer, 3 W. & S. 419. Of course, as to wills written since the Act of 1833, such words would be construed much more strongly in favour of the devisee: Culbertson v. Daly, 7 W. & S. 195.

What is there, in the subsequent passages of the will, to impair the effect of this general devise? In the 2d article the testator expresses a desire that his estate at Cambo should not be sold, if his wife can do otherwise. So far from being restrictive, this plainly recognises the absolute proprietorship of the wife, and merely expresses a preference, to be followed or not, as she may think best under all the circumstances.

The 3d article is obscure; but in its plain reading, it is not only compatible with the absolute ownership of the wife, but incompatible with any other meaning. It is as if he had said, "I give you all my estate, but don't divest yourself of it until after your death, when you can leave it as you think proper." He seems to have been apprehensive that his widow might be induced to part with some of the estate to her disadvantage.

That this language was merely directory, and not mandatory, is plain from the 2d article. Had he meant to restrict his wife positively from selling, he would not have expressed a wish that the Cambo plantation should not be sold if she could do otherwise. Again: in the 4th article, at the death of his wife, what he might have left her, that is to say, the residue, was to be divided equally among the children. What is the import of residue? Surely that which should be left after she had spent and used what she wanted. On this point we have high authority in our own state.

In Pennock's Estate, 8 Harris 268, the construction of Mr. Pennock's will was before the Supreme Court for the third time, and finally settled. It was there held that, where a testator devised to his wife his real estate for life, and his personalty absolutely, "having full confidence she will leave the surplus to be divided at her decease justly among my children," the widow took the absolute ownership in the personalty, overruling Mc-

[Jauretche *v.* Proctor.]

Konkey's Appeal, 1 Harris 253, and Coates's Appeal, 2 Barr 129. The word surplus, it was decided, meant what was left of personal estate unconsumed, or undisposed of by the widow in her lifetime, and not the balance left after payment of testator's debts.   The following English cases may be consulted on this point: Lechmere *v.* Lavie, 2 Mylne & Keen 197; Pope *v.* Pope, 10 Sim. 1; Knight *v.* Knight, 3 Beav. 148; Pushman *v.* Pilliter, 3 Ves. Jr. 7; Horwood *v.* West, 1 Sim. & Stu. 389.

In the present will, residue has the same meaning as surplus. It could mean nothing but what was left, after the widow had spent what she might think proper to do.   It is therefore argued that no design is anywhere apparent on the face of the will to impair the fulness of the devise and bequest made to the wife in the 5th article; on the contrary, there is strong evidence on its face that the testator desired to impose no restriction of absolute ownership, or to imply it.   He would have preferred that a certain piece of property should be kept until after his wife's death; but this wish was not to be carried into effect unless with her consent, and without derogation to her absolute rights.   Any residue left he wished divided among his children equally—a wish quite consistent with absolute ownership in the wife.   If, however, legally inconsistent with the wife's paramount rights, the latter must prevail.   Nowhere is intention shown to cut down the absolute fee-simple interest, given to the wife, to a life estate. The comprehensive terms of gift, used in the 1st article, should therefore prevail, and the widow, it is submitted, is entitled to the whole estate, and can sell to a purchaser in fee simple.

The opinion of the court was delivered, January 25th 1865, by
WOODWARD, C. J.—It is a conceded point that the 1st article of the testator's will gave to his wife a fee simple in his real estate, and an absolute estate in his personalty, and the question is, whether the subsequent clauses must be so construed as to cut down her interest to a life estate.

The words of the 2d article, taken separately from the context, are manifestly merely precatory, and not mandatory.   He *desired* her not to sell the plantation at Cambo, if she could do otherwise, but he did not, by these words, expressly forbid a sale.

But the 3d article applies to the whole estate, as well that at Cambo as elsewhere; and its words necessarily qualify those of the 2d article.   According to the idiom of our language, there can be no doubt that the expression "she is not to divest herself," &c., is an imperative prohibition, and means that she shall not divest herself, or that power is withheld from her to divest herself, &c.

And though the will was written by a Frenchman, in French,

[Jauretche v. Proctor.]

and we may not be able to catch precisely the shade of thought which his words would convey to a French eye, yet, from the several translations with which we have been favoured, we think it pretty apparent that, by the idiom of the French, no less than by that of our own language, his words in the 3d article are not to be taken in a precatory sense, as expressive of desire, but in a mandatory sense, as expressive of will.

What is it, then, but the devise of a fee simple, with a denial of the power of alienation? "She is not to divest herself of what I may leave her, until after her death," implies that she may dispose of the estate by will, which can only take effect after death, but that she shall not dispose of it by deed, which must take effect during her life. The paramount thought in the testator's mind was to make his wife absolute owner of his estate, and he expressed this thought by sufficient words; but the particular thought was to take away from her one of the incidents of absolute ownership—in other words, that he would grant a fee, with power of testamentary disposition, but would withhold the power of alienation.

That this was his meaning is further apparent from the 4th article, which, in giving the "residue" over to the children, implied the right of consumption in the wife. This word residue, as used in this place, does not imply a residuum of estate or interest like a remainder, but a residuum of the property—or, in the testator's own language, of "what I may have left her," and in this sense is exactly equivalent to "surplus," a word which was fully considered and expounded in Pennock's Estate, 8 Harris 282. It was there said, upon the authority of several English cases, that where it can be implied from the will that a discretion is left to withdraw any part of the subject of the devise from the object of the wish or request, or to apply it to the use of the devise, no trust is created, but an absolute right to use and consume exists. As the word surplus in the devise over in that case was held to imply a right in the first taker to consume the whole, so the word residue here implies that the testator's wife was to enjoy his estate with no other restraint than that of alienation.

Such, then, is this will—the devise of an absolute estate to the wife, with all the rights of a tenant in fee, except the power of alienation, and with direction that what may remain of the property at her death may be equally divided among the children. Now, a power of alienation is necessarily and inseparably incident to an estate in fee, and therefore if lands be devised to A. and his heirs, upon condition that he shall not alien, the condition is void: 4 Kent 131; McWilliams v. Nisely, 2 S. & R. 513; Schummacher v. Negus, 1 Denio 448. And this principle is not peculiar to persons entitled to the inheritance of lands,

[Jauretche *v.* Proctor.]

but applies also to the entire or absolute interest in personalty: 1 Jarman on Wills 688. A *partial* restriction, such as not to alien to a particular person or for a limited time, may be supported, but a *general* restraint of alienation, when annexed to an absolute estate, is void, upon the familiar principle that conditions repugnant to the estate to which they are annexed, bind not.

To the same effect is that other rule in interpreting wills which sacrifices the particular to the general intent, where they are inconsistent. Here the testator's general intent was, that his wife should enjoy his whole estate absolutely, and that only the unconsumed residue should go to the children, and as his desires and expectations, however expressed, did not make her a trustee for the children, so neither can the expressions of his secondary intent, however imperative, restrict her enjoyment of the estate granted.

The judgment is affirmed.