# Paisley's Appeal.

1. A testator gave to his wife " the rents and profits of all my property during her life for her support and the support and education of my children under the direction of my executors." This did not create a trust for the children either in the widow or executors, nor give the Orphans' Court jurisdiction to call them to account or to decree in favor of the children for the future administration of the estate.

2. In the support of herself and children the widow was not under the direction of the executors; as long as the family lived together she was to have the control.

3. As to the management, renting and other disposition of the property, she was to be under the direction of the executors.

4. The children had no present interest, in any particular shares; the main object was to benefit the widow.

5. At the death of the widow the whole estate passes to the children under the intestate laws.

6. Pennock's Estate, 8 Harris 268; Willard's Appeal, 15 P. F. Smith 215, compared.

November 11th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Orphans' Court of *Allegheny county* : No. 69, of October and November Term 1871.

On the 5th of February 1870, Hugh Whiteside and Mary Jane his wife, John T. Shane and Anna his wife, J. B. Flack and Nancy P. his wife, presented their petition to the Orphans' Court of Allegheny county, representing :—

1 and 2. That Samuel Paisley died in 1850, leaving a widow, Ellen E. Paisley, and five children, three, the above-named female petitioners, by a first marriage, and two, Samuel T. and Ella, children of his surviving widow, and that he died seised of real estate in Pittsburg.

3. That by his will, dated July 22d 1850, he gave the income of his estate to his widow during life for her support and the support and education of his children, under the direction of his executors.

4. That the executors having died, letters of administration *d. b. n. c. t. a.* were granted to Alexander Hilands.

5. That since the testator's death his widow had collected the income of the estate, and continued to collect it.

6. That they believed the income was not less than $4000.

7. That the widow refused to apply any portion of the income to the support of the female petitioners, but was applying it to her own support, and the support of her own children, Samuel T. and Ella Paisley.

8. That Samuel T. was above twenty-one years of age and Ella above twenty years.

The petitioners prayed:—

1. That a citation issue to the said Ellen Everretta Paisley, Alexander Hilands, Samuel T. Paisley and Ella Paisley, and to such guardian *ad litem* of said Ella Paisley as the court may appoint, commanding them to be and appear before this court on a day certain to answer this bill.

2. That the court by its order and decree fix the proportions of the rents and profits of and from the property of the said Samuel Paisley, deceased, to which the said Mary Jane Woodside, Anna Shane and Nancy P. Flack are severally entitled, and secure the payment thereof to them.

3. For further relief.

The will, which was annexed to the petition, is as follows:—

"I, Samuel Paisley, do make this my last will and testament. I give and bequeath to my wife, Ellen Everretta, the rents and profits of all my property during her natural life, for her support and the support and education of my children, under the direction of my executors: Provided, however, my brother John shall receive $200, and my house which he now occupies for five years at $60 per yearly rent. I hereby authorize my executors to sell my property in the bottom north of Penn street, to improve my property on Penn street. I hereby appoint Alexander Laughlin and James Marshall, my executors, to carry this my last will into effect. July 22d 1850."

The widow, for herself and as guardian *ad litem* for Ella, answered, admitting the 1st, 2d, 3d, 4th, 5th, and 8th paragraphs of the petition, and referred to an exhibit containing what she alleged to be a statement of the gross and net income of the estate of the decedent which had come into her hands since his death.

She averred that Mary Jane Woodside and Anna Shane had lived with her, and been supported from the income of the estate until their respective marriages, and that since then they had been comfortably supported by their husbands; that Nancy P. Flack had lived with her and been supported out of the income of the estate until the year 1859, when she left defendant, and instituted proceedings in equity to have set apart to her separate use a portion of the estate, and that she had been unsuccessful in those proceedings; that she was married, and comfortably supported by her husband; that Samuel T. Paisley had comfortably supported himself for the last ten years, and had not, during

that time, needed or received any of the income; that Ella was under age and unmarried, and had no estate or livelihood to support her, and that she had been educated according to the intent of her father's will, and continued to be supported under the same, and that all the income of the estate, after the payment of taxes, &c., was not more than sufficient for the support of the defendant and her daughter.

" That the mode and manner of expenditure of the income of said estate, as above set forth, met the approval of Alexander Laughlin and James Marshall, the executors of the will of Samuel Paisley aforesaid, and the said expenditure was known to and approved by them."

She denied that the petitioners were entitled to any relief.

The exhibit showed that the gross income of the estate had been $920 in the year 1851, and had increased yearly until 1869, when it was $3457.50; that the net income was $650 in 1851, and in 1869 was $2857.50.

Samuel T. Paisley answered, admitting the facts as to himself, as stated in the widow's answer, and averred that he "believes that he is not legally entitled to any portion of the same during the life of his mother.    That the income of said estate is not more than sufficient to support the widow of·said decedent; that instead of being supported out of said estate, as alleged in the petition, he has repeatedly loaned the estate money to meet existing demands, when there was no money on hand to pay and satisfy the same.    That this respondent declines to interfere or take part in these proceedings, and prays that the petition be dismissed at the cost of petitioners."

A replication was filed, and John H. Bailey, Esq., was appointed auditor, to take testimony and report the facts to the court.

He found the facts, and reported: * * *

" Without attempting to pass upon the conditions of decedent's will, but assuming for the purpose of this reference that the income of the estate is material as between these parties, I report that the relation the widow bears to this estate would require her to account for the rents and profits derived from this property." * * *

" I find and report to the court, that the gross rents derivable from the estate of Samuel Paisley, deceased, at the present time, amount to the sum of $3531."

Exceptions were filed to the auditor's report: they were overruled, and the report confirmed.

The court decreed that Ellen E. Paisley should pay the daughters the sums set out in the decree, for the respective years since 1865,

" Being, each of said sums, the one-fifth of two-thirds of the net rents, &c., as shown by her answer filed, for all of said years

prior to 1870, and as to 1870, the same proportion of the amount found by the auditor, after deducting $431.53 for the taxes of that year, which she is to pay, if not already paid; but said sum to each for 1870, is to be subject to deduction for a like proportion of any further payments made by her for necessary repairs, or other proper charges or assessments which are chargeable upon the rents for that year, if any such have been made by her." * * *

"That hereafter, the leasing and management of all the real estate of the said Samuel Paisley, deceased, be committed exclusively, during the life of said Ellen Everretta Paisley, and until the further order of this court, to Alexander Hilands, Esq., the administrator, with the will annexed, *de bonis non*, and his successor in said office, who is to pay to the said Ellen Everretta one-third of the net rents and profits thereof, for her share thereof, and to each of the five children of said deceased, one-fifth of two-thirds of said net rents and profits, as they accrue, upon request of them severally made; and that the said Ellen Everretta Paisley and every of the parties other than said administrator, be enjoined from making any future leases of said property, collecting any of its rents, or otherwise in any way intermeddling therewith, except, and then only, as thereunto expressly authorized by said administrator."

Ellen E. Paisley appealed to the Supreme Court, and there assigned for error, that the court erred:—

1. In entertaining the petition, in requiring an appearance and answer, and in making a decree, because, the parties being devisees and not legatees, the Orphans' Court had no jurisdiction.

2. In taking from Mrs. Paisley the management, control and income of the property, the corpus of which passed to her for life by the devise of the rents and profits.

3. In ordering Mrs. Paisley to pay to the petitioners the several sums of money mentioned in the decree, because, if entitled at all, they were not entitled to the sums ordered to be paid, and having been supported and educated until they married, they had no further claim upon the rents and profits devised to the wiodw.

*Bayne & Magee* and *T. M. Marshall*, for appellant, and *H. B. Swope*, for S. T. Paisley.—1. The Orphans' Court had not jurisdiction, this being a *devise* of the rents and profits of all the testator's real estate to his wife for life, for her support and the support and education of his children. This is not only a devise of the rents and profits, but also of the lands to her for life: McCullough's Appeal, 2 Jones 197; Willard's Appeal, 15 P. F. Smith 265; George Schreyer's Estate, 2 Brewster 526.

2. A devise of the rents and profits to the wife for life passes the land itself, though it may be coupled with a trust or condition:

[Paisley's Appeal.]

Earl *v.* Rowe, 35 Maine 414; Anderson *v.* Greble, 1 Ash. 136; Carlyle *v.* Cannon, 3 Rawle 489; Kinsey *v.* Lardner, 15 S. & R. 192. The Act of 1834 puts an administrator with the will annexed on the footing of a surviving executor, but not on the footing of a testamentary trustee. He has no power to execute a trust reposed in executors by the will, outside the line of the ordinary duties pertaining to the office of executor: Ross *v.* Barclay, 6 Harris 179; Moody's Lessee *v.* Fulmer, 3 Grant 18.

In Pennsylvania every bequest or devise to the wife is conditional by force of the statute, which declares that it shall be in lieu of dower, if the contrary be not expressed. She therefore stands in the position of a purchaser for a valuable consideration: Reed *v.* Reed, 9 Watts 263; Isenhart *v.* Brown, 1 Edwards Ch. R. 411; Williamson *v.* Williamson, 6 Paige Ch. 298; Spangler's Estate, 9 W. & S. 135; Hubbard *v.* Hubbard, 9 Metcalf 50; Burridge *v.* Tradyl, 1 P. Williams 120; Brewer *v.* Monce, 2 Ves. Sr. 420; Heath *v.* Dendy, 1 Russ. 543.

The testator made the provision in the will for the support of his family, as a family, and not as individuals. Marriage and removal from the homestead forfeited the right to further support, as it did to further education: Camden *v.* Benson, cited in Connolly *v.* Farrell, 8 Beavan 350; Thorpe *v.* Orren, 2 Hare 608; Bowden *v.* Laing, 14 Sim. 111; Crockett *v.* Crockett, 1 Hare 457; s. c. 5 Id. 326. Where the interest of the children's legacies is given to a parent, to be applied towards their maintenance and education, the parent takes the interest subject to no account: Berkley *v.* Swinbourne, 6 Sim. 613; Hadow *v.* Hadow, 9 Id. 438; Brown *v.* Paull, 1 Sim. N. S. 97. Widows have always been deservedly the favorites of the law: Rewalt *v.* Ulrich, 11 Harris 388; Wilson *v.* McKeehan, 3 P. F. Smith 79; Gilbert *v.* Bennett, 10 Sim. 371; Galbraith *v.* Green, 13 S. & R. 85. A construction acquiesced in so long by all parties should be sustained: Hagerty *v.* Albright, 2 P. F. Smith 274.

*J. B. Flack, M. W. Acheson* and *Veech & Watson,* for appellees.—The Orphans' Court has jurisdiction when executors are in any way accountable: Acts of March 29th 1832, sect. 4, Pamph. L. 190, June 16th 1836, sect. 19, Pamph. L. 792, 2 Bright. Purd. 1104, pl. 8; Wimmer's Appeal, 1 Whart. 96; Brown's Appeal, 2 Jones 333; Noble's Appeal, 3 Wright 425. This is a bequest of rents and profits, and therefore a legacy: 1 Roper on Leg. Chap. III. sect. 3. The Orphans' Court has jurisdiction over legacies: Black *v.* Black, 10 Casey 354; Ashford *v.* Ewing, 1 Id. 213; Linsenbigler *v.* Gourlay, 6 P. F. Smith 166; Kinsey *v.* Lardner, 15 S. & R. 192. As to the construction of the will: Longmore *v.* Elcum, 2 Younge & Collyer 363. The construction should be as near as possible to the general rules

of inheritance: Amelia Smith's Appeal, 11 Harris 9; Malone *v.*
Dobbins, 11 Harris 296; McIntyre *v.* Ramsey, Id. 317.

The opinion of the court was delivered, November 16th 1871, by
SHARSWOOD, J.—The view which we take of the true construc-
tion of the will of Samuel Paisley disposes of all the questions
which have been mooted on this appeal.  He gives to his widow,
the present appellant, the rents and profits of all his property
during her natural life, under the direction of his executors.  The
object of this devise to her is expressed to be "for her support and
the support and education of his children." We must give the words
of the will a reasonable construction.  He certainly never could have
intended that in the support of herself and the support and edu-
cation of his children she should be under the direction of his
executors.  They were not to have rule in the household—to
direct how or where she should live—how the children should be
fed and clothed—to what schools they should be sent.  Undoubt-
edly he meant that as long as his family continued to live together
she should preside as the mistress, and have the control of it
herself.  He had confidence in her that she would do her duty as
a mother, and it does not appear that his confidence was misplaced.
In the management of the property—the renting and other dis-
position of it—he considered that her sex and her household
duties would, in a measure at least, incapacitate her, and he wills,
therefore, that as to all that, she shall be under the direction of
his executors.  If we read the will as if these words, "for her
support and for the support and education of my children," were
in a parenthesis, this construction becomes very evident.  These
words created no trust, then, either in the widow or the executors
for the children, which could give the Orphans' Court jurisdiction
to call them to account, or to make a decree in favor of the child-
ren for the future administration of the estate.  In that respect
it was like Willard's Appeal, 15 P. F. Smith 265.  The case of
Kinsley *v.* Lardner, 15 S. & R. 192, does not sustain the conten-
tion of the appellees.  No such point was made, and the only
matter decided was, that the wife took an estate for life, with a
vested remainder to the children.  The case of Longmore *v.* El-
sum, 2 Younge & Coll. 363, 21 Ch. Eng. Rep. 362, also cited and
relied on, even if we should feel disposed to follow it, differs very
materially from the present.  There was no direct devise as here
to the wife, but to the executors in trust to permit her to receive
the rents and profits for her own use and benefit, and for the
maintenance and education of the children, and *subject to such
trusts*, in trust after the decease or marriage of the widow, for his
said children in equal shares.  All the provisions of the will were
spoken of as trusts.  If, however, in the will before us, this was
a trust for the children, when did it commence?  On the child-

[Paisley's Appeal.]

ren's attaining majority? The will says nothing about it. It must have been on the death of the testator. Is it conceivable that he meant her to account to each child, and show that his or her share had been wholly expended in support and education? What was her share and the share of each child? The decree of the court below assumes that the rents and profits were to be distributed just as if Samuel Paisley had died intestate, or as if the widow had elected against the will, to take her dower at common law. But what authority is to be found in any expression of the will for any such assumption? Even if we adopt the unreasonable construction that it was the support of the widow and the support and education of the children which were subjected to the direction of the executors, it is evident that it was subjected to their discretion as well as their direction. Such a distribution as that decreed might be most unjust and inequitable. It might leave the widow with all the cares and responsibilities of the household upon her, without an adequate support for herself. It may well be doubted whether such a discretion would not be a personal confidence reposed in the executors, though given to them by that name—which could not be exercised by a stranger to the testator—an administrator *de bonis non*. However that may be, we think that the words, which expressed the object for which the devise of the entire property was made to the wife for life, meant to repose that discretion in her, did not vest any present interest in the children as *cestuis que trust* of any particular share or shares, and in that respect the principles of construction adopted in Pennock's Estate, 8 Harris 268, are applicable. Indeed this case, in one respect, may be considered as stronger than that; for there the words of confidence and recommendation had relation to the disposition which the legatee should make of the surplus remaining at her death, when she would no longer need it for herself. Here the main object of the testator was the benefit of his widow, to whom he devises the whole estate during her natural life, with the expression of his confidence that she would apply the rents and profits during that period to her own support and the support and education of his children. Doubtless she will be solemnly bound *in foro conscientiæ*, to assist any of them if they should ever need it as far as her means will permit. But it would be unreasonable and evidently in contravention of the will of their father, to hold that she must pay to them two-thirds of her income without regard to their circumstances or her own comfort. Upon her death the entire estate will devolve to them under the intestate laws, and for that event they must learn patiently to wait.

Decree reversed at the costs of the appellees.