## Anderson's Estate.

*Wills—Construction—Gift to widow defeasible on remarriage—Security—Fund to be held intact for family—Whether trust is created.*

Where testator, by the first paragraph of his will, gives all his property to his widow, to be held by her for the use and benefit of herself and children, and by the second expresses a "desire" that his executor shall collect his life insurance policies, invest the proceeds and pay the income to her for living expenses of herself and children, and by the third that the entire estate "be held intact" for the use and benefit of his widow and children, unless she should marry again, in which event one-third of the total estate is to be paid over to her and the remainder to be held in trust by the executor for the children until twenty-one, when the principal is to be paid to them, the widow takes an absolute estate, defeasible as to two-thirds upon her remarriage, and is entitled to the fund upon entering security in double the value of the two-thirds thereof.

GEST, J., dissents.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1925, No. 287.

The facts and the provisions of the will appear from the following extract from the adjudication of the Auditing Judge, HENDERSON, J.:

"The widow, by election duly recorded and filed, has elected to take under the testator's will.

"She claims that the entire estate should be awarded to her absolutely. The language of the will is somewhat obscure, but upon analysis will readily yield to well-known rules of interpretation.

"The first paragraph of the will provides as follows:

" 'I give and bequeath to my wife Bessie W. Anderson all the household furniture of every description, all money on hand or on deposit in any bank, all stocks and bills receivable and all other property, real and personal, of whatsoever kind or description that I may own at the time of my death, to be held by her for the use and benefit of herself and our children.'

"Were there nothing further in the will, this clause would undoubtedly be sufficient to give the widow an absolute interest in the things therein enumerated.

"The second paragraph of the will further provides as follows:

" 'I desire that my executor, hereinafter named, shall collect all my life insurance policies and (after paying my burial expenses and any just debts owing by me) shall invest the remainder in safe securities, either stocks, bonds or mortgages, the income from same to be paid to my wife for the living expenses of herself and our children and for the education of our children.'

"This clause, standing alone, apparently gives the proceeds of the life insurance policies to the executor in trust to invest and to pay the income to the widow for the living expenses of herself and the children; there is no gift over. Apparently, the gift of income is indefinite.

"The third paragraph of the will is as follows:

" 'I desire that my estate shall be held intact and for the use and benefit of my said wife Bessie W. Anderson and our children unless she should marry again. In that event I desire that one-third of the total value of my estate, including the investments as aforementioned, shall be paid over to her, my said wife, for her sole use and benefit, and that the remaining two-thirds of my estate, including investments aforesaid, shall be divided into equal portions—one portion for each of my children—to be held in trust by my executor for said children, the income to be used in each case for the living expenses and education of said children, the principal sums to be paid to them when they have become twenty-one years of age.'

Anderson's Estate.

"What is the effect of this last paragraph? It should be remembered that the first paragraph on its face gave the widow a fee; the second paragraph gave her indefinitely the income from the securities in which the proceeds of the life insurance were to be invested, with no gift over; and the last paragraph directs that the estate should be held intact for the benefit of the widow, unless she should marry again, and in that event the testator provided that she should take one-third of the estate absolutely and the remaining two-thirds, 'including the investments aforesaid,' to be divided equally among the children.

"It will be observed that the investments are mentioned in the first paragraph of the will and in the second paragraph thereof, showing that the third paragraph was an attempt to act on all of the property included in the first and second paragraphs. While the first paragraph apparently gave a fee to the widow, the third paragraph reduces this to a defeasible fee, in that if she married again her interest was to be cut down to one-third.

"While the second paragraph apparently gave the widow the income arising from the investment of the proceeds of the life insurance policies, with no gift over of the remainder, the effect of the third paragraph is to enlarge this gift into a defeasible fee. See Fidelity Trust Co. v. Bobloski, 228 Pa. 52; McCall v. Umbenhauer, 270 Pa. 351; Kirkpatrick's Estate, 280 Pa. 306, and Connelly's Estate, 1 D. & C. 561.

"The entire balance for distribution will be awarded to the widow, one-third absolutely, which fund, in the contingency of her remarrying, she will be entitled to; the remaining two-thirds will be awarded to her upon entering security in the sum of $70,000: Du Bouchet's Estate, 22 Dist. R. 402; or if she does not desire personally to take and hold this two-thirds, she may petition this court for the appointment of a trustee, in which event the said two-thirds will be payable to such trustee when appointed and qualified.

"There was no objection to the account, which shows a balance of principal of $81,816.10, from which deduct widow's exemption, $500, balance $81,316.10, of which inheritance tax is awarded to the Commonwealth to be paid to the register, and of the balance then remaining, composed as indicated in the account, one-third is awarded to Bessie W. Anderson absolutely, and two-thirds to Bessie W. Anderson, upon the entry by her of security in the sum of $70,000 for the protection of the contingent interests, or to a trustee when duly appointed and qualified, in accordance with the directions of this adjudication."

Bevan A. Pennypacker (of Morgan, Lewis & Bockius), for exceptant.

George A. Maene (of Roberts & Montgomery), contra.

THOMPSON, J., Sept. 24, 1925.—We are of the opinion that the Auditing Judge correctly construed the will of testator. The authorities cited abundantly sustain the conclusion reached, and for the reasons set forth in the adjudication, all exceptions filed thereto are dismissed and the same is confirmed absolutely.

HENDERSON, J., concurring.—These exceptions raise the question, Does this will create a trust? If so, for whom? Unless the widow remarries, there is no gift in remainder, and, hence, no estate to preserve for remaindermen. If it be said the trust is for the widow, there being no spendthrift clause, the trust is dry and the fund should be paid to the widow. Can a trust be set up in favor of the children? Not without rewriting the will. What would be the rights of the children? Could they claim an accounting? What is the

share of each child? What is the duty of the mother under the alleged trust? These questions must be answered before a trust can be fastened on this fund. Her duty in the forum of her conscience is large, but this would not be sufficient to support a trust. In Pennock's Estate, 20 Pa. 268, our Supreme Court definitely refused to follow the doctrine of the Roman law in supporting trusts arising in the conscience.

It has been suggested that the language of this will should be construed as a trust, because in the third paragraph he expresses the desire that the estate shall be held "intact" for the wife and children, and that the only way of holding it "intact" is by a trust. The purpose of this direction was to assure two-thirds of the estate to the children should the widow remarry. This direction may be satisfied by reducing the fee given to the widow to a defeasible one; and, in this connection, we should remember that this is a gift to a widow—deservedly favored in the law—in lieu of dower, and not to be cut down unless the meaning is clear and indubitable.

But let us assume that the direction to hold the estate "intact" is sufficient to raise up a trust—we are then just where we started. For whom is the trust? If dry, the fund should be awarded to the widow. The rights of the children are, as we have seen, only enforceable in the forum of the conscience.

Remembering that the earlier parts of the will gave the widow an absolute estate, we cannot say that the use of the word "intact" should be regarded as sufficiently clear and explicit to cut down what had been absolutely given.

Paisley's Estate, 70 Pa. 153, is in point, and parts of the opinion are illuminating. The essential paragraph in the will in that case was as follows:

"I, Samuel Paisley, do make this my last will and testament. I give and bequeath to my wife, Ellen Everretta, the rents and profits of all my property during her natural life, for her support and the support and education of my children, under the direction of my executors. . . ."

The court below awarded the estate in trust and an appeal to the Supreme Court was sustained, Judge Sharswood saying *(inter alia)*:

"The object of this devise to her is expressed to be 'for her support and the support and education of' his children. We must give the words of the will a reasonable construction. He certainly never could have intended that in the support of herself and the support and education of his children she should be under the direction of his executors. They were not to have rule in the household—to direct how or where she should live—how the children should be fed and clothed—to what schools they should be sent. Undoubtedly he meant that as long as his family continued to live together she should preside as the mistress and have the control of it herself. . . . If we read the will as if these words, 'for her support and for the support and education of my children,' were in a parenthesis, this construction becomes very evident. These words created no trust, then, either in the widow or the executors for the children, which could give the Orphans' Court jurisdiction to call them to account or to make a decree in favor of the children for the future administration of the estate. . . . If, however, in the will before us, this was a trust for the children, when did it commence? On the children's attaining majority? The will says nothing about it. It must have been on the death of the testator. Is it conceivable that he meant her to account to each child and show that his or her share had been wholly expended in support and education? What was her share and the share of each child? The decree of the court below assumes that the rents and profits were to be distributed just as if Samuel Paisley had died intestate, or as if the widow had elected against the will to take her dower at common law. But what authority is

to be found in any expression of the will for any such assumption? Even if we adopt the unreasonable construction that it was the support of the widow and the support and education of the children which were subjected to the direction of the executors, it is evident that it was subjected to their discretion as well as their direction. Such a distribution as that decreed might be most unjust and inequitable. It might leave the widow with all the cares and responsibilities of the household upon her without an adequate support for herself. It may well be doubted whether such a discretion would not be a personal ·confidence reposed in the executors, though given to them by that name—which could not be exercised by a stranger to the testator—an administrator de bonis non. However that may be, we think that the words, which expressed the object for which the devise of the entire property was made to the wife for life, meant to repose that discretion in her, did not vest any present interest in the children as cestuis que trust of any particular share or shares, and in that respect the principles of construction adopted in Pennock's Estate, 20 Pa. 268, are applicable. . . . Here, the main object of the testator was the benefit of his widow, to whom he devises the whole estate during her natural life, with the expression of his confidence that she would apply the rents and profits during that period to her own support and the support and education of his children. Doubtless she will be solemnly bound in foro conscientiæ to assist any of them, if they should ever need it, as far as her means will permit. But it would be unreasonable and evidently in contravention of the will of their father to hold that she must pay to them two-thirds of her income without regard to their circumstances or her own comfort. Upon her death, the entire estate will devolve to them under the intestate laws, and for that event they must learn patiently to wait."

The Paisley will merely gave the widow a life estate, and, hence, the only question was whether she must share it with the children.

GEST, J., dissenting.—Whatever incongruity may exist among the three separate paragraphs of which this will is composed, it is clear that in every one of them the testator's dominant purpose was the same, namely, to provide for the living expenses of his wife and his three children, all of whom, it may be remarked, are very young, the youngest having been born just before the execution of the will. Even if the first paragraph of the will be alone considered, and construed as vesting a fee in the widow, it is coupled with the statement that the devise is intended for the use and benefit of the children as well as of herself.

It should be observed that while the first paragraph of the will is in the form of a direct bequest to the testator's wife, the second paragraph, on the contrary, is clearly a bequest to the executor, as trustee, of a portion of the estate to provide for the living expenses of the testator's wife and children and the education of the latter. In the third and final paragraph of the will the testator expressly and clearly directs that his estate, meaning, of course, his entire estate, shall be held "intact" for the benefit of his wife and children, unless she should marry again, and this last paragraph should be given its full effect as indicative of the final wishes of the testator: Roberjot v. Mazurie, 14 S. & R. 42; Geiger's Appeal, 1 Mon. 547; Walling, P. J., in Reed's Estate, 37 Pa. C. C. Reps. 205; Keisel's Estate, 17 Dist. R. 476; Kelley's Estate, 17 Dist. R. 456.

By the adjudication there was awarded to the widow one-third of the estate absolutely, and, in my opinion, this is clearly contrary to the will. The entire estate should have been awarded to the executor to be held intact and as a

Anderson's Estate.

whole and in trust for the uses and purposes of the will until the death or remarriage of the widow.

The Auditing Judge was of opinion that the will vested a defeasible estate in the widow in fee in the entire estate and awarded one-third to her absolutely for the reasons stated by him, citing such cases as Fidelity Trust Co. v. Bobloski, 228 Pa. 52, and McCall v. Umbenhauer, 270 Pa. 351. These were in effect cases of a devise to the widow so long as the devisee should remain unmarried, and not cases of a trust. And Paisley's Estate, 70 Pa. 153, also cited, is likewise readily distinguishable, for there the rents and profits of the estate were given directly to the widow for her life for her support and the support and education of the children, and the court merely held that the superadded words "under the direction of my executors" did not create a trust. That is very different from the present case, where the intention is clear to my mind that the executor should hold the estate intact and pay the income to the widow for the support of the family.

I think the exceptions of the guardian *ad litem* should be sustained, and the balance for distribution be awarded to the executor in trust for the uses and purposes declared in the will.