## McCready Trust.

Argued September 24, 1956. Before STERN, C. J., BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Emory A. Schwall,* with him *William A. Challener, Jr.,* for appellant.

*Vincent M. Casey,* with him *Charles J. Margiotti, Frank R. Bolte,* and *Margiotti & Casey,* for appellee.

OPINION BY MR. JUSTICE BELL, November 12, 1956:

Early in September 1930, Harrison R. McCready was in a sanitarium for treatment as a habitual drunkard. He was married and had one child, a minor nine months of age. On September 6, 1930, Mrs. McCready had a petition prepared in the nature of a lunacy pro-

ceeding. On September 9, 1930, McCready examined the present deed of trust and executed it the next day, viz., September 10, 1930. The trust fund amounted to $150,000. Several weeks later Mr. and Mrs. McCready resumed living together. In March 1931, a final separation occurred and on November 30, 1931, Mrs. McCready obtained an absolute divorce from Mr. McCready. Since that divorce she has twice remarried. On July 10, 1933, McCready attempted to set aside the deed of trust of September 10, 1930, on grounds of his mental incapacity. His complaint, after a full hearing, was dismissed by the Court.

After the McCreadys' daughter became twenty-one years of age, the trustee filed its first account in Court. The daughter contended she was entitled under the deed of trust to receive directly from the trustee one-half of the net income of the trust from the date of her majority until the death of her mother. During the minority of the daughter, the trustee paid the net income, averaging approximately $3500. to $4000. per year to the mother, who expended a part of it for the support of her daughter during minority. Mrs. McCready continued to give to her daughter after her majority and until the daughter's marriage, an apartment and/or food which was the equivalent (according to the daughter) of $75. a month. Whether these payments after majority were made out of love and affection or out of a feeling of obligation (under the deed of trust) does not clearly appear.

The deed of trust or trust agreement was dated the 10th day of September, 1930, and was made between Mr. McCready and his wife and the Commonwealth Trust Company of Pittsburgh as trustee. The agreement recited that unhappy differences had arisen between McCready and his wife as a result of which they had been living separate and apart and "it has become

necessary, . . . to make provision for the maintenance and support of his wife and their child, . . . a minor aged nine months; and

"WHEREAS, after notice of the possible institution and commencement of certain legal proceedings in the Court of Common Pleas of Allegheny County by the said Margaret L. McCready, for the purpose of protecting the said Harrison R. McCready, Margaret L. McCready and their said daughter, the parties of the first and second parts have agreed to settle their differences out of Court, by the creation of a trust fund, hereinafter described and created, and the mutual agreements and covenants herein contained; and . . .

"WHEREAS, the party of the first part being represented by counsel and being fully advised of his rights in the premises and being desirous of making said settlement out of court for the purpose of avoiding publicity and litigation, and in order to protect his said wife and daughter, has determined to create the trust hereinafter set forth . . .

"Now, THIS AGREEMENT WITNESSETH

. . .

"To pay the income therefrom to the said Margaret L. McCready for the support of herself and her said daughter *during her lifetime,* said payments to be made quarterly, or in other agreeable installments, *and after her death* the income therefrom to be paid for the benefit, education and support of said minor, Margaret Luella McCready, until she becomes of the age of twenty-one (21) years, and after said period to be paid directly to said minor during her lifetime; PROVIDED, HOWEVER, that if said Margaret L. McCready and their said daughter, Margaret Luella McCready predecease the said Harrison R. McCready said trust shall cease, and the princi-

---

* Italics throughout, ours.

pal and any unexpended income therefrom shall revert and be paid to the said Harrison R. McCready; *should the said Harrison R. McCready and Margaret L. Mc-Cready predecease their daughter,* Margaret Luella Mc-Cready in such event the trust shall continue for the benefit of said Margaret Luella McCready for and during the term of her natural life, and the income or so much thereof as may be necessary shall be used by the said Trustee for the care, comfort, maintenance and education of said Margaret Luella McCready for and during her minority, but as and when she arrives at the age of twenty-one (21) years the income shall be paid unto her, the said Margaret Luella McCready for and during her life and *upon her death she shall have the power to make testamentary disposition thereof* to and among such persons as she may desire; but should she fail to make a Last Will and Testament or should she die during minority, in such event the fund shall be paid over unto her personal representative or be distributed among her next of kin, ascertained in accordance with the Intestate Laws of Pennsylvania in force at the date of this agreement.

"PROVIDED FURTHER, that if the said Margaret Luella McCready and Harrison R. McCready shall both die during the lifetime of Margaret L. McCready said trust shall continue for the benefit of said Margaret L. Mc-Cready and she shall also have the power to make testamentary disposition thereof to and among such persons as she may desire, but should she fail to make a Last Will and Testament, in such event the fund shall be paid over unto her personal representative or be distributed among her next of kin, in accordance with the Intestate Laws of Pennsylvania in force at the date of this agreement."

There then followed a spendthrift trust clause. Mc-Cready then gave the Packard sedan to his wife and

certain specific furniture. McCready then agreed to pay all existing store and charge accounts and his wife agreed not to make any other charges at any time in the future. There then followed this very important clause:

"The said Margaret L. McCready agrees to join with the said Harrison R. McCready in the execution and delivery of any and all deeds, which may in the opinion of his counsel be required, in order to vest title in any real estate now in the name of said Harrison R. McCready or *in their joint names,* in such person or corporation as the said Harrison R. McCready shall nominate, and the said Margaret L. McCready covenants and *agrees not to make any claim against the said Harrison R. McCready for either the support of herself or her said child, the maintenance, education and support of said child now being undertaken by the said Margaret L. McCready as her special duty and charge;* the said Margaret L. McCready further covenants and agrees that she will release, quit-claim and discharge, and she does now release, quit-claim and discharge the said Harrison R. McCready of any and all interest which she now has or might in the future have either in his personal or real estate, or in his estate upon his death, by reason of the marital relation; and the said Harrison R. McCready covenants and agrees that he will release, quit-claim and discharge . . . the said Margaret L. McCready of any and all interest which he now has or might in the future have either in her personal or real estate, or in her estate upon her death, by reason of the marital relation.

"And the said Harrison R. McCready and the said Margaret L. McCready covenant with each other that each of them will at the request of the other join in the execution, acknowledgment and delivery of any deed, mortgage or other instrument in writing which may be

required to fully carry out the purpose of this agreement *with respect to real estate now owned or hereafter acquired* by either party, without demanding or receiving any additional compensation therefor other than that represented by these presents.

"The said Margaret L. McCready and Harrison R. McCready agree and covenant to and with each other that he, the said Harrison R. McCready shall visit and be in the company of their said child at the residence of the said Margaret L. McCready at such reasonable time and times as he shall desire."

McCready then agreed to pay his wife's attorney fees in a specific amount for services rendered in this matter.

At the audit the daughter offered to prove that the deed of trust was created for the purpose of preventing her father from dissipating his remaining estate, and that the mother did not intend to separate permanently from her father. These offers of proof were rejected by the auditing Judge. The agreement purported to contain the entire agreement between the parties; there was no averment or proof that anything was omitted therefrom by fraud, accident or mistake; and consequently the general rule would seem to apply, namely, parol evidence to alter, contradict or add to the written agreement is inadmissible. Where, however, a written agreement is ambiguous, oral evidence is admissible to explain the agreement and to resolve the ambiguity in order to ascertain the meaning of the parties: *Waldman v. Shoemaker,* 367 Pa. 587, 80 A. 2d 776; *Morgan v. Phillips,* 385 Pa. 9, 122 A. 2d 73. Assuming, arguendo, that the present agreement is ambiguous and that the proof offered should have been received, it, together with all the other evidence in the case, would be insufficient to support plaintiff's claim.

The question of whether provisions for the support of a wife and the support, maintenance and education of a minor vests in the minor any interest in the income during or after minority has arisen several times in Pennsylvania, as well as in several other States where the law appears to be different than the existing law of Pennsylvania.

In *Cunningham's Estate,* 340 Pa. 265, 16 A. 2d 712, this Court, speaking through Justice LINN, laid down the following general rule: "The general rule is that expressions for the support or maintenance of a beneficiary and the support, instruction and education of the beneficiary's children are considered explanatory of the object of the gift and not as vesting any interest in the children referred to; they are regarded as explanations of the motive for making the gift and not as limitations of it.   See Schuldt v. Reading Trust Co., 292 Pa. 327, 330, 141 A. 152; Paisley's Appeal, 70 Pa. 153, 158; Cox v. Rogers, 77 Pa. 160, 165; Jauretche v. Proctor, 48 Pa. 466, 471; Biddle's Appeal, 80 Pa. 258, 264; Cressler's Estate, 161 Pa. 427, 29 A. 90; Mazurie's Estate, 132 Pa. 157, 163, 19 A. 29; Fisher's Estate, 268 Pa. 405, 112 A. 17."

Under the aforesaid general rule the minor child did not receive any vested interest in the income and certainly no vested interest in one-half of the income during minority.   A fortiori a minor child would, under the general rule, have no vested right after majority.

In *Paisley's Appeal,* 70 Pa. 153, testator in his will gave his estate to his trustee to pay his wife "the rents and profits of all my property during her life for her support and the support and education of my children under the direction of my executors."   The widow supported the two children until their respective mar-

riages and the Court held that the guardian ad litem of one of the daughters, aged twenty, was not entitled to any part of the income. The Court, speaking through Justice SHARSWOOD, said: "The object of this devise to her [his widow] is expressed to be 'for her support and the support and education of his children.' We must give the words of the will a reasonable construction. . . These words created no trust, then, either in the widow or the executors for the children, which could give the Orphans' Court jurisdiction to call them [the widow and children] to account, or to make a decree in favor of the children for the future administration of the estate. . . If, however, in the will before us, this was a trust for the children, when did it commence? On the children's attaining majority? The will says nothing about it. It must have been on the death of the testator. Is it conceivable that he meant her to account to each child, and show that his or her share had been wholly expended in support and education? What was her share and the share of each child? . . . we think that the words, which expressed the object for which the devise of the entire property was made to the wife for life, meant to repose that discretion in her, did not vest any present interest in the children as cestuis que trust of any particular share or shares, . . . But it would be unreasonable and evidently in contravention of the will of their father, to hold that she must pay to them two-thirds of her income without regard to their circumstances or her own comfort. Upon her death the entire estate will devolve to them under the intestate laws, and for that event they must learn patiently to wait."

The present deed of trust is a far stronger case in favor of the wife than the usual *testamentary trust* to pay the income to a wife for her life for her support

and the maintenance, education and support of minor children. This deed of trust was in the nature of a combined separation agreement, agreement for maintenance and support, a property settlement, and a custody and support agreement. By the terms of the agreement McCready provided not only for the maintenance, support and education of his daughter during her minority, but provided further for her to receive, after his wife's death, the entire income for his daughter's life with power of testamentary disposition on her death; and upon failure to exercise her power of appointment, or if she died during minority, the trust funds were to be paid to her personal representative or to be distributed among his daughter's next of kin in accordance with the Intestate Laws of Pennsylvania. This was far more than the law of Pennsylvania would give to this daughter in the absence of this agreement, for it is well established that a father (a) owes a duty of support to a daughter only during minority (unless she is physically or mentally unable to engage in profitable employment or is otherwise a charge on the County): *Commonwealth ex rel Groff v. Groff,* 173 Pa. Superior Ct. 535, 98 A. 2d 449; and (b) is under no legal duty or obligation to leave her any part of his estate in his will. A wife, on the other hand, is entitled to maintenance and support for her life, with the right to take at her husband's death one-half of his estate, if she elects to take against his will,* or if he dies intestate.**

Furthermore, by the terms of the trust McCready's wife relinquished all claims against McCready for the support of herself and for the maintenance, education and support of her child which she covenanted to be

---

* Act of April 24, 1947, P.L. 89, §8, 20 PS §180.8.

** Act of April 24, 1947, P.L. 80, §2, 20 PS §1.2.

her special duty and charge; she also released him from all interest which she presently had or might in the future have in his personal and real estate, and upon his death all claim by reason of their marital relation. McCready, in turn, released his wife and her estate from any claim which he might have at her death by reason of the marital relation. There was also a division of furniture and covenants about their respective real estate (present and thereafter acquired).

Even if the daughter's offer of proof should be, for purposes of this argument, considered admitted, the intentions of McCready and his wife are clear. It is absolutely clear that this trust agreement or deed was made primarily for the benefit of the wife during her life; that the wife gave valuable consideration therefor and the daughter no consideration; that the daughter did not have during her mother's life any *vested* interest in the income; and that the daughter, after she attained her majority, was not entitled to any of the income therefrom during the life of her mother.

Decree affirmed; costs to be paid out of the estate.