## Raffensperger Estate

*Bulleit & Bulleit*, for accountant.

*Brown, Swope & MacPhail*, for exceptant.

*Bigham & Raffensperger*, for residuary devisees and legatees.

SHEELY, P. J., October 5, 1959.—The question for determination in this case is the proper construction of the will of C. B. Raffensperger, deceased. After a bequest to a cemetery association, testator provided in paragraph three of his will that: "I hereby will and bequeath the entire balance of my estate, both real and personal property, to my dear aunt, Alverta Eicholtz, for her use as long as she lives and after her death, all the rest, residue and remainder of my estate I will and bequeath as follows: . . .". Then follow two pecuniary bequests and then paragraph six provides: "The rest, residue and remainder is to be divided equally between (1) The Masonic Home, Elizabethtown, Pa. (2) The Hoffman's Orphanage, R.F.D., Littletown, Pa." Specifically the question is whether Alverta Eicholtz takes a simple life estate or a life estate with power to consume the principal. The balance of the estate, after costs of audit, etc., consists

of $20,579.62 in personalty, made up chiefly of bonds, and $10,000 in realty.

At the outset it is to be noted that in creating the life estate testator bequeathed "the entire balance of my estate" to his aunt "for her use as long as she lives," and after her death he bequeathed "all the rest, residue and remainder of my estate," and after the two pecuniary bequests he provided that "the rest, residue and remainder is to be divided."

In construing a will the primary aim is to ascertain and give full effect to the intention of testator as it appears from the four corners of the will. It is the actual intent of testator as ascertained from the language of his will which must prevail: Clark Estate, 359 Pa. 411 (1948). It is not what testator may have meant, but the meaning of the language used that governs: Myers Estate, 351 Pa. 472 (1945). It is not the province of the court to construe what testator possibly intended, but only what intention is expressed in the language used: Conner's Estate, 346 Pa. 271 (1943). Technical words, or words of definite meaning, are to be construed according to their legal or definite effect: Suttner Estate, 348 Pa. 159 (1943).

In this case testator did not use express words to create in his aunt a life estate with power to consume the principal. The power to consume, if it exists, must be implied from the language used, and this may be done when necessary to carry out the intention of testator: Brennan's Estate, 324 Pa. 410, 416 (1956). The aunt contends that it is implied from the provision that after her death "all the rest, residue and remainder of my estate I will and bequeath as follows: . . .", contending that the words "rest, residue and remainder of my estate" have the same meaning as the words "surplus," "remaining personal property," "if any left," "any part remaining" or "what shall be left." She relies largely upon the decision in Markley's

Estate, 132 Pa. 352 (1890), where the will gave to the wife "all my property and effects, real, personal and mixed, of whatever nature and kind, for and during her natural life.

"3. It is my will and I hereby order and direct that at the death of my wife Elizabeth all of the residue of said property, real, personal and mixed, shall go to my children. . . ."

It was there held that the word "residue" as used by testator implied the right of consumption of the principal by the widow. The court quoted from Jauretche v. Proctor, 48 Pa. 466, 468, 471, in which the will provided: "At the death of my above-named wife, what I may have left to her, that is to say, the residue, is to be divided . . ." In that case the court said: "This word residue, as used in this place, does not imply a residuum of estate or interest like a remainder, but a residuum of the property—or, in the testator's own language, of 'what I may have left her,' and in this sense is exactly equivalent to 'surplus'. . . ."

To the same effect is Gold's Estate, 133 Pa. 495 (1890), where testator gave and bequeathed all of his property to his wife "to have, hold, use, possess and enjoy the same during her lifetime. And further, it is my will and I do order after my wife's death that all the remaining property of whatever kind shall be sold . . ."

In these cases testator referred to the "residue of said property," "what I may have left her, that is to say, the residue" and "all the remaining property." The word "residue" as thus used implies that not all the property which had been given to the wife for life would be available for the remaindermen, but only that which remained at the time of her death. Since less than all the property might pass to the remaindermen it must have been his intention that she should consume a portion of it. The decisions

were also influenced by the fact that a large part of the assets of the estates consisted of perishable property, such as household goods, farming implements, stock and produce of the farm. As pointed out in Markley's Estate, supra, page 354: ". . . they were of such a character that their use, even for a limited period, constituted consumption."

The present case differs from the cases cited in several important respects. In the first place, the personal property here consists mostly of bonds, the use of which would not, of itself, constitute consumption. Secondly, testator did not use the term "residue of *said property*," referring to the property given to his aunt for life, but he used the term "rest, residue and remainder of *my estate*." Thus his language did imply a residuum of estate or interest like a remainder, rather than a residuum of the property given to his aunt for life. See Jauretche v. Proctor, supra. Finally, he used not only the word "residue," but the term "rest, residue and remainder of my estate." In this respect the will is almost identical to the will in Suttner Estate, supra, where the will gave the entire estate to the widow "as long as she remains my widow," and upon her death or marriage "the residue and remainder of my . . . estate shall be divided . . ." It was there contended, as it is here, that the words "residue and remainder" disclosed a testamentary intent that the widow be given a life estate with power to consume, but the Supreme Court found no justification for such implication, saying: "The words 'residue and remainder' are technical legal terms with a well understood and definite meaning. They signify all that is left after the gifts specified or designated have been paid or satisfied . . . Technical words, or words of a definite meaning, are to be construed according to their legal or definite effect." This case is controlling in the present case. "The word 'remainder' is

the correct legal language to pass the land after the expiration of a life estate therein": France's Estate, 75 Pa. 220, 224 (1874).

The learned auditor placed great stress upon the fact that testator referred to his aunt as his "dear aunt" and that she was the primary object of his bounty. He reasoned further that testator must have known that considerable expense would be involved in maintaining the real estate bequeathed to his aunt for life, and that therefore he must have intended to permit her to consume the principal of the personalty. It is undoubtedly true that the aunt was the primary object of testator's bounty, but, as pointed out above, it is not our province to construe what testator possibly intended but only what intention is expressed in the language used. Having used technical language, such language must be construed according to its legal meaning.

The exceptions to the report of the auditor must be sustained. The auditor's calculation of the distribution is correct and distribution will be ordered in accordance therewith except that the distribution to The Gettysburg National Bank as trustee will be restricted to payment of the income from the trust to Alverta Eicholtz during her lifetime.

And now, October 5, 1959, the exceptions to the report of the auditor are sustained. Distribution is ordered in accordance with the schedule of distribution prepared by him deleting the words "for the benefit of Alverta Eicholtz for life with power to consume" in paragraph (c) and substituting therefore the words: "To pay the income therefrom to Alverta Eicholtz during her life-time." An exception to this order is noted on behalf of Alverta Eicholtz.